## P. H. & F. M. ROOTS COMPANY *v.* MEEKER.

[No. 20,394. Filed February 16, 1905. Rehearing denied June 9, 1905.]

1. NEGLIGENCE.—*Proximate Cause.*—*Master and Servant.*—*Dangerous Machinery.*—*Falling into.*—Where the servant was engaged in turning the crank in the operation of a traveler, with full knowledge of an unguarded cogwheel three feet away, and, having removed the crank, he attempted, with his left foot, to push some rubbish from the floor in order to have a clear place to lay such crank, his right foot resting on a piece of shafting, and such shafting rolled causing such servant to fall, and in an effort to save himself from a fall his hand was caught in such cogwheel and injured, such fall was the proximate cause of such injury. p. 133.

2. SAME.—*Proximate Cause.*—*Master and Servant.*—*Damages.*—Where a servant received his injuries because of a fall for which he alone was responsible, he can not recover therefor from the master, such injuries being *damnum absque injuria*. p. 136.

3. SAME.—*Proximate Cause.*—*What is.*—Where an injury is traceable by natural laws of causation to defendant's wrongful act, such act is· the proximate cause of such injury, if such injury, according to common experience and observation, was a probable one to flow from such wrongful act. p. 137.

P. H. & F. M. Roots Co. *v.* Meeker—165 Ind. 132.

4. NEGLIGENCE.—*Proximate Cause.*—*When Question for Court.*— When the facts are undisputed, what is the proximate cause of the plaintiff's injury is a question of law for the court. p. 139.

5. TRIAL.—*Verdict.*—*Answers to Interrogatories.*—*When Controlling.*—Where the answers to the interrogatories are in irreconcilable conflict with the general verdict the answers control. p. 139.

From Rush Circuit Court; *Douglas Morris,* Judge.

Action by Menzo J. Meeker against the P. H. & F. M. Roots Company. From a judgment on a verdict for $4,000, defendant appeals. Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590. *Reversed.*

*Miller, Elam & Fesler, Conner & Conner* and *Smith, Cambern & Smith,* for appellant.

*Elliott & Barrows, Forkner & Forkner* and *Watson, Titsworth & Green,* for appellee.

HADLEY, C. J.—This was an action by appellee, an employe, to recover damages for personal injuries alleged to have been received by the negligence of appellant, a manufacturing company, in failing to guard certain cogwheels, as required by section nine of the factory act of 1899 (Acts 1899, p. 231, §7087i Burns 1901).

It was shown at the trial, by answers to interrogatories submitted to the jury, that appellee was about forty-six years of age, possessed of the faculties of sight and hearing, and on July 14, 1902, was, and had been for nine months, in the employ of appellant, in its foundry. He had worked most of his time for twenty years in machine-shops and about machinery. Among other machines and devices in its plant, appellant had a crane for lifting and shifting heavy castings. In its construction the crane had a wooden upright mast pivoted at both ends, to which was attached a horizontal boom with its outer end slightly depressed. Upon this boom was a traveler, to which the weight to be lifted was attached, which, when released at the mast, would run out to the end of the boom of its

own weight.   The traveler was operated backwards and for-
wards on the boom by winding and unwinding a chain that
ran around a drum located near the foot of the mast.   The
drum was turned by one person placing an iron crank eight-
een inches long, weighing eight to ten pounds, upon the
end of the shaft upon which the drum was hung.   In the
lifting apparatus were two heavy four-inch rimmed, un-
housed cogwheels, near the base of the mast, that worked
in each other, one thirty inches in diameter, the other much
smaller, which were propelled by electric power.   On July
14, 1902, appellee and Charles King, a fellow workman,
were engaged in operating the crane.   Appellee was en-
tirely familiar with the construction of the crane, and how
it was operated.   He proceeded to the drum, took up the
crank from the floor, placed it on the shaft, and revolved the
drum so as to allow the traveler to run outward on the boom
to the desired point.   Having set the traveler, he had at that
time no further business at the foot of the mast or about
the gearing.   When engaged about, or in turning, the drum
in the ordinary way, it was not necessary for the appellee
to have his hands nearer than three feet from the cogwheels,
which wheels were in plain view while standing in the
vicinity of where he used the crank.   There were some
pieces of boards, a few wooden wedges, and some scrap-iron
lying on the floor near where appellee stood in turning the
drum.   The bare floor appeared in places.   That condition
of the floor was usual, and well known to appellee.   There
was nothing to prevent him from seeing what was on the
floor.   When appellee had completed adjusting the traveler,
he took the crank off the drum shaft and held it in his left
hand.   At the time he was standing with the ball of his right
foot resting on a short piece of iron shafting about one and
one-eighth inches in diameter, and, placing his weight on
his right leg, swung his left foot clear of the floor, in an
attempt to push aside objects lying on the floor to make a
clear spot to place the crank.   He might have found a clear

spot at that place on the floor to rest his feet upon if he had tried, and he could have safely laid the crank down without removing anything from the floor. Simultaneously with this effort to clear the floor, Charles King turned on the electric current and started the lifting apparatus, including the cogwheels. As appellee swung his left foot, the piece of shafting rolled under his right foot, unbalanced him, and, thereby starting to fall, he threw out his hands, and his right hand fell into the unguarded moving cogs and was injured. He knew that the cogs were unguarded. He did not know what was under the ball of his right foot, but if he had looked he could have seen that it was a short piece of iron shafting. The starting to fall was the cause of his getting his hand in the cogs, and, if he had looked where he was placing his feet, and given reasonable attention to his footing, he would not have been hurt. It was not necessary for appellee to remove anything from the floor before he could safely lay down the crank. No one representing the company ever had reason to anticipate that an employe would be hurt by such a combination of circumstances as produced appellee's injury. Nor was it known to anyone representing the company that a piece of iron shafting was lying on the floor near the base of the crane. Appellee might have removed with his right hand anything he undertook to push aside with his left foot, and if he had so employed his hand he would have escaped injury. He voluntarily assumed the position occupied by him at the time he fell, was not being hurried, and had plenty of time to remove from the floor with his hands anything that was in his way. The proximate cause of appellee's injury was losing his balance and starting to fall. The losing of his balance and his effort to save himself from falling, and the starting of the unguarded cogwheels at the same instant, coöperated, and caused the plaintiff's injury.

It is not averred or claimed that appellant was negligent in allowing pieces of wood and iron to accumulate about the

drum where appellee was required to work. The only negligence complained of is the failure to guard the cogwheels. It is strenuously argued by appellant's counsel that these cogwheels, being only occasionally used, and so situated that no employe in performing his duties was required to approach them nearer than three feet, are not within the spirit of the statute relied upon. §7087i Burns 1901, Acts 1899, p. 231, §9. It is furthermore contended that, assuming that this class of cogs does come within the statute, the special findings clearly show that appellee was guilty of contributory negligence.

The view we have taken of the case makes it unnecessary for us to decide either of these questions. The less doubtful premise, as it appears to us, is that the efficient cause of appellee's injury was the unexpected rolling of the piece of shafting under his foot, whereby he lost his balance, and in his effort to avoid falling threw his hand out and into the cogwheels.

It is an undisputed rule of law in cases of this kind that recoverable damages are confined to those which flow from injuries that are traceable directly and proximately to the negligence of the defendant. Here the alleged negligence of the defendant consisted in leaving the cogs unguarded. We are informed by the jury that, in performing his duties about the drum, appellee's hands would not necessarily approach the cogs nearer than three feet. The unguarded condition of the wheels did not in any way bring about appellee's fall. He would not have been injured if he had not stumbled and fallen. Assuming that it was negligence in appellant to leave the cogwheels uncovered, if appellee had purposely thrust his hand into them, it is clear that he could not recover. If he thrust it in, in consequence of a cause set in motion by himself, and for which appellant was not to blame, the principle is the same so far as it affects his right of recovery.

As before intimated, we deem it unnecessary to inquire whether it was negligence in appellee to stand on one foot with the ball of it elevated by some unknown substance one and one-eighth inches higher than the heel, without looking to see what said substance was, when he could have easily ascertained by casting his eyes downward, and, with an iron weight of eight to ten pounds in his left hand, swing his left foot around to force aside objects lying on the floor. For it is plain that the rolling of the iron under his foot was the first, immediate and originating cause of his injury, and this will amount to what is termed in law the proximate cause, provided that falling into the unguarded cogs from stumbling in the manner of appellee's unfortunate accident was not a result reasonably to have been expected by appellant. In actions of this sort the defendant is liable for the natural and probable consequences of his wrongful act or omission, and this means any consequence, immediate or remote, that is directly traceable by natural laws of causation to the wrongful act as the major force. What are regarded as natural and probable consequences are sometimes defined to be such results and effects as, according to the usual experience of mankind, ought to have been apprehended. The question is never whether the result is possible, but was it probable; that is, would it appear probable according to common experience and observation? It is said in *Stone* v. *Boston, etc., R. Co.* (1898), 171 Mass. 536, 51 N. E. 1, 41 L. R. A. 794, that one is bound to anticipate and provide against what usually happens and what is likely to happen, but not against what is unusual and unlikely to happen, or what is remotely and slightly probable.

In *Elliott* v. *Allegheny County Light Co.* (1903), 204 Pa. St. 568, 54 Atl. 278, a painter fell from a ladder, and in falling reached out and caught a live electric wire that was not properly insulated, whereby he was burned and shocked. "The proximate cause," says the court, "of

plaintiff's injuries was his fall from the ladder, and not his grasping the wire in the line of his fall," and the lighting company was held not liable.

In *Borck* v. *Michigan Bolt & Nut Works* (1896), 111 Mich. 129, 69 N. W. 254, the plaintiff, a lad under fourteen years of age, employed by the defendant, in violation of the factory act of the state, got into a tussle with another boy, over a bucket of nuts, in a six-foot passageway between running machines. While pulling at the bucket, the other boy let go suddenly, whereby the plaintiff in falling threw his hand into some going cogs and was injured. Held, that it was not the hiring of plaintiff in contravention of the statute, but his scuffling with another boy, that constituted the proximate cause of his injuries.

In *Willis* v. *Armstrong County* (1897), 183 Pa. St. 184, 38 Atl. 621, the plaintiff drove over a bridge, and after going fifty feet up an abutting hill the traces broke, and the wagon, running backwards, missed the bridge, and for want of guard-rails ran over an embankment into the stream, whereby the plaintiff was injured. The court held that it was the breaking of the traces, and not the absence of the guard-rails, that constituted the proximate cause.

The doctrine, as stated by Wharton in his valuable work, is, in effect: When an event follows a cause in natural sequence, not always, but in accordance with natural laws, then it is a contingency which a prudent person would expect, and a failure reasonably to estimate and guard against the probability of its occurrence imputes negligence; but, he says: "The foreseeing of a harm as remotely and slightly probable does not involve the imputation of such a harm, for there is nothing that we can do that may not remotely produce some harm." Wharton, Negligence (2d ed.), §76. To the same effect, see Pollock, Torts, 30, 39; Cooley, Torts, 68; 1 Addison, Torts, *40. The reasoning in *Hattaway* v. *Atlanta Steel, etc., Co.* (1900), 155 Ind. 507, proceeds upon the same line.

When the facts are undisputed, as in this case, what constitutes proximate and remote cause becomes a question of law for the court. *Elliott* v. *Allegheny County Light Co., supra; Stone* v. *Boston, etc., R. Co., supra.*

We think it can not be fairly said that the stumbling occasioned by either his own carelessness or by pure accident, for which no one would be answerable, and which caused appellee to throw his hand into the cogs, was a result that appellant should have anticipated as natural and likely to occur of leaving the wheels uncovered. The fall was from a combination of circumstances that would probably not again concur in a century, of which nothing stronger should be said than that it was remotely and slightly probable. The hurt was not an ordinary, natural sequence of the unprotected cogs. At most, the latter was merely a remote cause.

The general verdict, in effect, finds that appellee's injury was the direct and proximate result of the uncovered wheels. The answers of the jury to the interrogatories, opposed by all the inferences that may arise under the issues in support of the general verdict, show that the immediate, proximate cause of the injury was the rolling of the iron under appellee's foot. These answers are in irreconcilable conflict with the general verdict, and, under the familiar rule, the latter must fall. It follows that the court erred in overruling appellant's motion for judgment notwithstanding the general verdict. The manner of the accident being uncontroverted, we do not perceive how appellee may be benefited by a retrial.

The judgment is therefore reversed, with instructions to sustain appellant's motion for judgment *non obstante,* and to render judgment upon the special findings in favor of appellant.