## Chicago & Erie Railroad Company et al. *v.* Dinius.

### [No. 21,073.   Filed March 20, 1908.]

1. PLEADING. — *Complaint.*—*Railroads.*—*Defective Roadbeds.*—*Injuries to Brakemen.*—*Proximate Cause.*—A complaint showing that the plaintiff was a railroad brakeman; that the company negligently maintained, for switching purposes, a "Y" so constructed that there were large, wide and open deep places between the ties; that such brakeman was ignorant thereof; that, in crossing such track in attempting to couple the rear car of his train with a box-car standing on such "Y", his foot slipped from the tie on which he stepped and he fell into one of such places, and because thereof, he was unable to extricate himself, by reason of which he was run over and crushed, states no cause of action.   p. 224.

2. SAME. — *Complaint.* — *Allegations.*—*General.*—*Specific.*—Specific allegations in a complaint control the general allegations thereof. p. 229.

3. RAILROADS.—*Servants Making Couplings.*—*Negligence.*—*Proximate Cause.*—A switchman who, in hurriedly making a coupling, stepped upon a cross-tie and slipped and fell into a hole negligently left there by the company, of the existence of which hole he was ignorant, and by reason of which he was unable to extricate himself, cannot recover, since his slipping must legally be regarded as the proximate cause of his injury.   pp. 229, 231, 232.

4. NEGLIGENCE.—*Proximate Cause.*—The cause which originates and sets in motion the dominating agency that necessarily proceeds through other causes as mere instruments in the natural line of causation, must be regarded as the proximate cause. p. 231.

5. RAILROADS.—*Defective Roadbed.*—*Injuries to Brakemen.*—*Anticipation of Injuries.*—A railroad company which negligently leaves holes or low places between the ties in a "Y" used continuously for switching purposes, cannot be held to anticipate that a brakeman, in making a coupling, might probably slip from a tie and fall therein and be run over.   p. 231.

6. NEGLIGENCE.—*Anticipation of Precise Injury.*—Persons are liable for injuries resulting from their negligence, where injury therefrom might reasonably have been apprehended. p. 232.

From Wabash Circuit Court; *A. H. Plummer*, Judge.

Action by Clark W. Dinius against the Chicago & Erie Railroad Company and another. From a judgment on a verdict for $7,250 for plaintiff, defendants appeal. *Reversed.*

*Charles A. Schmettau, U. Z. Wiley, A. Braden Clark, Clarence Brown, Warren G. Sayre, W. O. Johnson, George C. Gale, W. G. Todd* and *Kenner, Lucas & Kenner,* for appellants.

*M. L. Spencer, W. A. Branyan, H. B. Shively* and *F. O. Switzer,* for appellee.

JORDAN, J.—This action was commenced in the Huntington Circuit Court by appellee to recover for personal injuries sustained by him on account of the alleged negligence of appellants herein, the Chicago & Erie Railroad Company and the Toledo, St. Louis & Western Railroad Company. The venue of the cause was changed to the Wabash Circuit Court.. Each of the defendants separately demurred to the complaint on the ground of insufficiency of facts therein alleged. These demurrers were overruled and proper exceptions reserved by the respective defendants. The defendants answered separately by the general denial. The cause upon the issues was tried by jury and a general verdict returned in favor of the plaintiff, assessing his damages at $7,250. Along with the general verdict the jury returned answers to a series of interrogatories. The defendants separately moved for judgment in their favor on the interrogatories and also filed separate motions for a new trial and in arrest of judgment, all of which motions were denied and exceptions reserved. The court then rendered judgment on the verdict. Separate assignments of errors are predicated by appellants on each of the adverse rulings of the lower court.

The first question for our consideration is the sufficiency

of the complaint. It is alleged therein "that on March 4, 1904, and for a long time prior thereto, and ever since, the defendant Chicago & Erie Railroad Company has owned and operated a railroad for hire, with passenger- and freight-cars, drawn by locomotives propelled by steam, from Chicago, Illinois, to Marion, Ohio, which line of railroad passes through Huntington county in the State of Indiana, and through Van Wert county in the state of Ohio, and that said Toledo, St. Louis & Western Railroad Company is a corporation duly organized and operating under the laws of the states of Ohio, Indiana, Illinois and Missouri; that on March 4, 1904, and for a long time prior thereto, and ever since, it has owned and operated a railroad for hire, with passenger- and freight-cars, drawn by locomotives propelled by steam, from Toledo, Ohio, to St. Louis, Missouri, which line of railroad passes through Huntington county in the State of Indiana, and through Van Wert county in the state of Ohio; that the tracks of said railroad companies cross each other at Ohio City in Van Wert county, Ohio; that there is a switching yard in the eastern part of said town of Ohio City, in connection with and as a part of the Chicago & Erie Railroad Company's track, and a 'Y' extending therefrom to, and uniting with, the track of the Toledo, St. Louis & Western Railroad Company's track; that such 'Y' is built upon a roadbed which is upon land and territory owned by the Chicago & Erie Railroad Company, and that such 'Y' and other portions of such track hereinafter named are constructed with, and consist of, cross-ties, rails, and frogs placed upon the roadbed, which roadbed was constructed by the Toledo, St. Louis & Western Railroad Company, and such rails, frogs and ties were placed thereon and are maintained, together with such roadbed, by the Toledo, St. Louis & Western Railroad Company; that the Toledo, St. Louis & Western Railroad Company, prior to March 4, 1904, and on said date, and continuously ever since, has jointly occupied, maintained and used said 'Y'

and said track with the Chicago & Erie Railroad Company, by virtue of a lease held by said Toledo, St. Louis & Western Railroad Company from said Chicago & Erie Railroad Company; that prior to March 4, 1904, and on said date, and ever since, each of said defendant railroad companies has had a traffic arrangement by virtue of a contract between them, and that they were at that time, and prior thereto, each switching and operating over and along their switches in said yard at Ohio City, and over and along said 'Y' hereinbefore mentioned, and side- and delivery-tracks, and that said traffic arrangement aforesaid was in full force and effect and under actual operation on March 4, 1904; that this plaintiff on March 4, 1904, was regularly employed by the defendant Chicago & Erie Railroad Company as brakeman on one of the freight-trains, and was running from Marion, Ohio, to Huntington, Indiana, on said road; that at the town of Ohio City in Van Wert county, Ohio, while this plaintiff was so employed and in the line of his duty, and while working with one of the crews, consisting of a locomotive engineer, freight-train conductor, and other brakemen in the employ of the Chicago & Erie Railroad Company, and while attempting to make a coupling between two freight-cars on the Chicago & Erie Railroad Company's delivery- and side-track in the eastern part of the switch yard—said delivery- and side-track leads onto, and is a part of, the 'Y' hereinbefore described—and while the car on the east side, namely, Chicago & Erie Railroad Company's car No. 72,470, was standing still, and the car on the west side, namely, Chicago & Eastern Illinois Railroad Company's car No. 60,407, was backing up towards the east, the latter car being propelled by a locomotive, which locomotive was then and there operated by the Chicago & Erie Railroad Company, a part of the chain on the lever which operated the coupling of the eastern car, namely, the car herein first-above mentioned, was absent, and such coupling could not

be operated with the lever, and it became an emergent necessity, in order to make such coupling, to operate same on the car backing up, and the lever on the car backing up was on the opposite side of the car from where plaintiff was standing, and, in order to operate the coupling on the car backing up, plaintiff was compelled to go to the opposite side of the track from where he was standing; that for such purpose he attempted to cross the track, and in so doing he stepped upon the end of one of the cross-ties of the track; that his foot slipped off of the tie and onto a low place between the cross-ties, and he fell to the ground within the rails and into one of said low places between the cross-ties; that he attempted to extricate himself immediately, and to move and roll his body forward and off the track, if possible, he not having time to rise, the moving car being so close to him; that on account of being in said low place between the cross-ties, he was unable to remove his person, that is, to roll away and get off of the track, and was caught by the moving car then backing up, and his left hip was dislocated and the foot of the right leg was cut off in the region of the ankle by the wheels of one of the trucks of the moving car passing over his ankle; that the track upon which this alleged injury occurred, at the spot where plaintiff fell, and for ten feet on each side thereof, was not properly ballasted and filled with gravel, cinders or other substance, so that six inches of cross-ties below the bottom of the rails were exposed, and that there were large, deep and wide-open spaces between the cross-ties, and that such track had been in such condition for a long time, to wit, three months, and that the defendants and each of them had knowingly, negligently and carelessly suffered and permitted said ties and track at the point where said injury occurred on said 'Y' and delivery- and side-track as herein described, to remain in said condition for a period of three months as aforesaid, prior to the happening of said injury.''

The complaint then alleges that there was a traffic ar-

rangement or contract between the two companies, under which it became the duty of each severally, and both jointly, to keep said roadbed ballasted between said cross-ties at such point of accident in a proper and safe condition for its employes to work over and upon; that at the place where plaintiff fell, as aforesaid, and was injured, there was much switching done by both of said defendants, and that on account of much traffic and frequent hitching and unhitching, changing and switching cars, it required the employes of each of the defendants daily, and often many times a day to traverse said place, where plaintiff fell; that, on account of the lack of filling and ballasting of said roadbed at the point where plaintiff fell and was injured, and for ten feet along each side thereof, and the wide, open, deep places between the cross-ties, as aforesaid, such track was very dangerous at said point where brakemen in the employ of each of said defendants in coupling and uncoupling and switching cars were required to traverse; that, "on account of such holes and open places, as aforesaid, being carelessly and negligently left there and thus by the defendants and each of them, he, the plaintiff, fell into the open place aforesaid, and on account of the lack of ballasting and on account of the low place aforesaid he could not remove himself therefrom in time to avoid the injury aforesaid, and thereby and on account of which he received such injuries, and on account of which he could not remove his body from in front of said car so backing up, and thereby was caught and received said injury;" that the defendants, and each of them, were jointly and severally guilty of negligence in not having said track ballasted and filled up between said ties at the place where such injury occurred, and in leaving the deep and wide open places between the cross-ties. Facts are averred to show that the plaintiff was wholly ignorant of and had no knowledge of the fact that the place where he was injured was not properly filled and ballasted between the ties, etc., and that he had no knowledge of the fact that

said track where he was injured was dangerous and unsafe, but that defendants, and each of them, had notice and knowledge for three months prior to the accident of the defective condition of the aforesaid track at the point where he was · injured. After alleging freedom upon the part of appellee from contributory negligence, the pleading closes with the allegation "that wholly on account of the negligence of the defendants, and each of them, in not providing a safe place for him to work, and in not having the track at the point where he fell properly filled and ballasted between the ties and rails, and on account of the defendants, and each of them, negligently leaving said place open and unfilled between the ties, as aforesaid, his foot slipped into said hole, and he fell on said track and got into the low place between the cross-ties, as aforesaid, and on account of the defendants' negligence and the depth of said hole he was unable to get out, and received the injury aforesaid."

Appellants' counsel contend that the facts alleged in the complaint do not disclose that the negligence attributed to appellants was the proximate cause of the injury sustained by appellee. On the other hand, counsel for the latter argue that the complaint establishes that the low place, or hole, as they term it, was the proximate cause of the injury. It will be noted that the complaint specifically charges that plaintiff attempted to cross the railroad track to make the coupling in question, and that "in so doing he stepped upon the end of one of the cross-ties; that his foot slipped off of the tie and into a low place between the cross-ties, and he fell to the ground within the rails and into one of said low places between the cross-ties;" that "he attempted to extricate himself, and to move and roll his body forward and off the track, if possible, he not having time to rise, the moving car backing up was so close to him; that, on account of being in the low place between the cross-ties, he was unable to remove his person, that is, to roll away or get off the track, and was caught by the moving car then backing up," etc.

Where specific facts are alleged in a complaint, as in this case, in respect to the happening of the accident in question or the negligence imputed to the defendant, they will control general statements in regard to the same matters. *Frain* v. *Burgett* (1898), 152 Ind. 55; *Southern R. Co.* v. *Elliott* (1908), *post,* 273.

It is apparent, we think, that the slipping of appellee's foot from the cross-tie upon which he had stepped was the first immediate and originating cause of the injury which he sustained. By reason of the fact that his foot slipped from the tie it appears that he fell to the ground into one of the low places between the rails. No complaint is made in the pleading in respect to the tie from which his foot slipped, but the cause of the accident in question is attributed to the negligence of appellants in not properly ballasting their roadbed at the place where the accident occurred, and in maintaining it with the low places thereon, into one of which appellee fell, and from which, as alleged, he was unable to extricate or remove his body in time to escape being run over by the moving car. The case of *P. H. & F. M. Roots Co.* v. *Meeker* (1905), 165 Ind. 132, is analogous to the case at bar. Appellee, in that case, an employe of the company, had rested his foot upon a piece of iron shafting lying upon the floor of the factory in which he was at work. With his foot upon the shafting he attempted to push some rubbish away in order to make a clear space on the floor to place a crank. In pushing aside the rubbish the piece of shafting upon which his foot was resting rolled under his foot, and he thereby started to fall, and in trying to prevent himself from falling he threw out his hands, one of which was caught in an unguarded cogwheel of a nearby machine and was injured. It was held that the rolling of the iron under his foot was the immediate or proximate cause of his injury, and not the unguarded cogwheel which caught and injured his hand in the fall. We, in that case, said: "The unguarded condition of the wheels did not in any way

bring about appellee's fall. He would not have been injured if he had not stumbled and fallen. Assuming that it was negligence in appellant to leave the cogwheels uncovered, if appellee had purposely thrust his hand into them it is clear that he could not recover. If he thrust it in, in consequence of a cause set in motion by himself, and for which appellant was not to blame, the principle is the same so far as affects his right of recovery. * * * We think it cannot be fairly said that the stumbling occasioned by either his own carelessness or by pure accident, for which no one would be answerable, and which caused appellee ·to throw his hand into the cogs, was a result that appellant should have anticipated as natural and likely to occur of leaving the wheels unguarded. * * * The hurt was not an ordinary, natural sequence of the unprotected cogs. At most, the latter was merely a remote cause.'' In the appeal of *Elliott* v. *Alleghony County Light Co.* (1903), 204 Pa. St. 568, 54 Atl. 278, appellant, while engaged as a painter, fell from or with a ladder that slipped from its position while he was using it. While in the act of falling he clutched at an electric light wire which was supported from brackets at the side of the building, which wire was not properly insulated, and for · this reason he was shocked and burned. In that case it was held that the fall from the ladder, and not the shock or injury which appellant received from the electric light wire, was the proximate cause of the accident. In *Willis* v. *Armstrong County* (1897), 183 Pa. St. 184, 38 Atl. 621, the plaintiff was passing over a bridge with his wagon. After going fifty feet up an abutting hill the traces broke and the wagon ran backwards, missed the bridge, and, on account of there being no guard-rail at the bridge, ran over an embankment into. the stream, whereby plaintiff was injured. In that appeal the court held that it was the breaking of the traces, and not the absence of the guard-rail, that constituted the proximate cause of the injury.

It has been affirmed by this court that proximate cause is

the efficient cause, or, in other words, the cause which origi-
nates and sets in motion the dominating agency that
4. necessarily proceeds through other causes as mere in-
struments or vehicles in the natural line of causation
to the result in controversy.  *Billman* v. *Indianapolis, etc.,
R. Co.* (1889), 76 Ind. 166, 40 Am. Rep. 230; *Pennsylvania
Co.* v. *Congdon* (1893), 134 Ind. 226, 39 Am. St. 251; *New
York, etc., R. Co.* v. *Hamlin* (1908), *ante,* 20, 10 L. R. A.
(N. S.) 881; *Enochs* v. *Pittsburgh, etc., R. Co.* (1896), 145
Ind. 635; *Lake Erie, etc., R. Co.* v. *Charman* (1903), 161
Ind. 95.

It is apparent that the slipping of appellee's foot from the
tie, which caused him to fall, was, as previously asserted,
the originating and immediate cause of the accident.
3. Certainly the inability of appellee to remove or extri-
cate himself from the place or position into which he
had fallen, as alleged, before he was caught and injured by
the moving car, was not such a result or consequence
5. as appellants in reason were bound to anticipate or
expect as the natural and probable consequence
of their alleged negligence in not properly ballasting their
roadbed and leaving low places therein at the point of the
accident.    The rule well affirmed by the authorities is that
under the law a person is required to anticipate or foresee
and guard against what usually happens or is likely to hap-
pen, but this rule does not require him to anticipate or fore-
see and provide against that which is unusual and not likely
to happen, or, in other words, that which is only remotely
and slightly probable.    The general test in such cases is not
whether the injurious result or consequence was possible,
but whether it was probable, that is, likely to occur accord-
ing to the usual experience of persons.    A wrongdoer can-
not be held responsible for a consequence which is merely
possible according to occasional experience, but only for a
result or consequence which is probable according to the ordi-
nary and usual experience of mankind.    *Enochs* v. *Pitts-*

*burgh, etc., R. Co., supra; New York, etc., R. Co.* v. *Perriguey* (1894), 138 Ind. 414, 419; *McGahan* v. *Indianapolis Nat. Gas Co.* (1895), 140 Ind. 335, 29 L. R. A. 355,. 49 Am. St. 199; *P. H. & F. M. Roots Co.* v. *Meeker, supra; Nickey* v. *Steuder* (1905), 164 Ind. 189; *Davis* v. *Mercer Lumber Co.* (1905), 164 Ind. 413, and authorities there cited; *Lane* v. *Atlantic Works* (1872), 111 Mass. 136; *Stone* v. *Boston, etc., R. Co.* (1898), 171 Mass. 536, 51 N. E. 1, 41 L. R. A. 794; Wharton, Negligence (2d ed.), §76; Webb's Pollock, Torts, 30-39; 1 Cooley, Torts (3d ed.), 124, 125; *Billman* v. *Indianapolis, etc., R. Co., supra; Terre Haute, etc., R. Co.* v. *Buck* (1884), 96 Ind. 346, 49 Am. Rep. 168.

When tested by the rule asserted and supported by the foregoing authorities, it is manifest that the negligence imputed to appellants was not the proximate cause of appellee's injury. It is true that he slipped and fell into one of the unfilled places between the cross-ties, and was, as alleged, unable immediately to extricate himself from the position into which he had fallen, but, had it not been for the efficient intervening cause—the moving car which ran over and injured him as alleged—he would, for aught appearing to the contrary, have escaped uninjured.

While, as heretofore asserted, a person charged with negligence is liable or responsible for the injuries which a prudent person in the exercise of ordinary care could have foreseen and anticipated as the natural and probable consequence. of his negligence, this rule does not require that he should have foreseen or anticipated the precise injury as it resulted from his negligence or omission of duty. *Billman* v. *Indianapolis, etc., R. Co. supra; Davis* v. *Mercer Lumber Co., supra.* It may be said, as asserted in *P. H. & F. M. Roots Co.* v. *Meeker, supra,* that appellee's injury was caused or produced by a combination of circumstances which might never again occur. From no view of the facts as alleged, when tested by the well-settled principles to which we have herein referred, can it be said that the injury in ques-

tion was the natural and probable consequence or result of the negligence charged against appellants, and that such a consequence ought to have been anticipated by them as likely to emanate from their negligence. It follows from the reasons herein given that the complaint is insufficient, and the demurrers thereto ought to have been sustained. Other objections are urged against the pleading, but these we have given no consideration.

For the error of the court in overruling the demurrers to the complaint the judgment is reversed and cause remanded, with instructions to sustain said demurrers.