INDIAN CREEK COAL AND MINING COMPANY v.
HEBERT.

[No. 10,861.   Filed June 9, 1921.]

1. APPEAL.— *Review.— Evidence.— Credibility.—* Although the
   court on appeal will not weigh evidence, it is not required to
   believe testimony that is incredible.  p. 112.

2. NEGLIGENCE.—*Ordinary Care.—Anticipating Ignition of Fire.*
   —A prudent man, in the exercise of ordinary care, would not
   anticipate that there was danger of steam radiators used for
   heating purposes causing the building in which they were lo-
   cated to become ignited, nor that there was such danger from
   coal cinders from engines 300 or 400 feet away falling on a
   rubberoid roof.  p. 112.

3. BAILMENT.— *Loss of Property.— Negligence.— Evidence.—
   Sufficiency.—*In an action for the loss of a miner's clothing by
   fire which destroyed a wash-house in which, on payment of a
   monthly charge, plaintiff was permitted to leave his street
   clothing while at work; the building having caught fire from
   the inside while the custodian was cleaning another wash-
   house, evidence *held* not to warrant an inference of negligence
   in failing to keep a custodian constantly within the wash-
   house, or in permitting him to lock it up when he was absent.
   p. 112.

From Gibson Circuit Court; *S. L. Vandeveer,* Judge.

Action by Emile O. Hebert against the Indian Creek
Coal and Mining Company. From a judgment for
plaintiff, the defendant appeals. *Reversed.*

*Whitcomb & Dowden* and *Thomas Duncan,* for appel-
lant.

*Curtis G. Shake, Joseph W. Kimmel* and *T. Morton
McDonald,* for appellee.

NICHOLS, P. J.—This action was begun in the Knox
Circuit Court. Thereafter appellant filed an affidavit
for change of venue and the case was sent to the Gib-
son Circuit Court.

The paragraph of complaint upon which the case was
tried was in substance as follows:

November 26, 1918, and prior thereto, appellant oper-

ated a certain coal mine, commonly known as the "Indian Creek Mine", in Knox county, Indiana, and maintained in connection with its said mine a certain wash-house, commonly known as the "pay wash-house;" which was a large frame structure, wherein the laborers could change their clothing and wash themselves. Said building was supplied with hot and cold water and was heated with steam conducted in pipes directly from the boilers of said mine, and was supplied with lockers for the safekeeping of the street clothes of such laborers while they were engaged in and about said mine during the work day. On or about August 11, 1918, appellee was employed by said appellant as a laborer in its said mine, and on said day they entered into a certain agreement and common understanding whereby appellant agreed with appellee that appellee should be entitled to the use and privileges of said wash-house in consideration that he would pay one dollar per month. Pursuant to said agreement and common understanding, appellee used said wash-house from August 11, 1918, up to and including November 26, 1918. During the same time said wash-house was used for the purpose aforesaid and under the arrangement and common understanding aforesaid by more than 250 other employes on each and every day that said mine was operated. Said employes, including appellee using said wash-house, deposited their street clothes therein for safekeeping while they were so employed in said mine. Said building was situated within 300 feet of the engine and boilers by which said mine was operated, and switch engines were used within 300 feet of it, and great quantities of live coals, sparks and cinders were discharged from said stationary engine and said switch engines, upon and about it, which were liable to ignite and set fire to said wash-house, all of which was to appellant well known. The iron pipes with which said

wash-house was heated contained live steam and water conducted directly into said pipes from the engines and boilers of said mine, which said steam and water heated said pipes to such a degree that articles of clothing and other combustible materials coming into contact therewith would become ignited, and render said building liable to be destroyed by fire, all of which appellant well knew. In the exercise of ordinary care and prudence, by reason of the location of said wash-house and its surroundings, it was the duty of appellant to keep a watchman in and about the same at all times when it was in use by said employes as aforesaid, to guard against said building becoming ignited and the contents thereby destroyed by fire. November 26, 1918, appellant carelessly and negligently failed and omitted to keep a watchman in and about said wash-house at all times, but, on the contrary, caused it to be closed and locked up, without leaving any person on watch in or about said building and premises, and on said day it burned and appellee's clothing was thereby wholly destroyed, all without his fault or negligence and to his damage in the sum of $75. Had appellant exercised reasonable care to keep a watchman in and about said wash-house and premises, as it was its duty to do, said fire could and would have been discovered in time to have extinguished the same without any loss or damage to appellee.

There was an answer in denial, a trial by jury and a verdict for appellee for $56.35, upon which judgment was rendered. Appellant's motion for a new trial was overruled, and this action of the court constitutes the only error assigned.

It will be observed that the only negligence that is charged in the complaint is that appellant failed to keep a watchman in and about the wash-house at all times, but on the contrary, caused it to be closed and locked up,

without leaving any person on watch in or about said building and premises.

It appears by the undisputed evidence that the wash-house involved was a frame building about fifty feet by 100 feet in size with walls fourteen feet high. It had a concrete floor, and was equipped with twelve or fourteen shower baths, and had pulleys by which the men's clothing was pulled up and secured by locking the free end of the chain to the benches. It was heated by steam conveyed in lead pipes three or four inches in diameter from a boiler about 300 feet away. These pipes were connected with eight one-inch pipes running along the wall about three feet above the floor, which eight one-inch pipes constituted the radiators. The building was lighted by electricity. There was no fire in the building. It was located about fifty feet from the office of the company, about seventy-five or eighty feet from another wash-house known as the free wash-house, 300 feet from the engine and boiler room having seven boilers, engines and dynamoes, and 404 feet from the switch tracks. There was a custodian of the two wash-houses, the one in charge at the time of the fire, having been so employed for six years. His duties were generally to keep these wash-houses in order, and to clean them, and to look after and protect the men's clothing. He testified that he was around the mine property practically all the time, in and around these buildings. He lived about 600 feet away. At the time of the fire which occurred about seven o'clock in the morning, he had gone over to the free wash-house to clean it, and had locked the door of the wash-house involved, because the day before he caught a boy going through the pockets of some clothing, and there had been some complaint of missing articles. Beside the custodian, the superintendent was located only fifty feet away and was in the building practically every day.

There were thirty to forty men above ground working within a radius of about 300 feet.

There had been some clothing on fire before, but the occasion of the fire was not the radiators or the electric wiring.  The men smoked in the building, and

1. sometimes threw lighted matches, and cigar stubs on the floor.  One witness testified that some clothing hanging along the side dropped on the steam pipes, and that it did not more than hit the pipes when it was in flames.  Justice is not so blind as to accuse us, as an Appellate Court, of weighing the evidence when we refuse to believe the incredible.  It is a matter of common observation and knowledge that while steam or hot water pipes are too hot to handle and that they will blister, yet they are not hot enough to ignite clothing.  Without discussing such evidence fur-

2. ther, we may safely state that a prudent man, in the exercise of ordinary care, would not anticipate that there was danger of steam radiators starting a fire, or that there was danger of coal cinders from engines 300 or 400 feet away falling on a rubberoid roof and igniting it.

It is evident that the fire here involved was not the result of coal cinders falling upon the roof, for when the custodian opened the door of the wash-house

3. there was so much heat within that it was impossible for him to enter, and this was at a time before the outside of the building was on fire.  It appears by the evidence that the building was wired for electric lighting, but that a few days before, the wiring had been carefully inspected and was found to be in good repair.  The fact that such building was so wired would not be sufficient reason for requiring the services of a watchman to prevent fires.

As was held in the case of *Belt R., etc., Co.* v. *McClain* (1914), 58 Ind. App. 171, 106 N. E. 742, we are safe in

saying that ordinary care did not require that appellant should keep a watchman constantly in and about the building here involved for the purpose of protecting it against fire, and the fact that the custodian had locked the building for a short time while he went over to the free wash-house to put it in order, does not sustain the averment of the complaint that no watchman was employed, and that the building was kept locked.

In the case of *Chicago, etc., R. Co.* v. *Dinius* (1908), 170 Ind. 222, 84 N. E. 9, the court says: "The rule well affirmed by the authorities is that under the law a person is required to anticipate or foresee and guard against what usually happens or is likely to happen, but this rule does not require him to anticipate or foresee and provide against that which is unusual and not likely to happen, or, in other words, that which is only remotely and slightly probable. The general test in such cases is not whether the injurious result or consequence was possible but whether it was probable, that is, likely to occur according to the usual experience of persons. A wrongdoer cannot be held responsible for a consequence which is merely possible according to occasional experience, but only for a result or consequence which is probable according to the ordinary and usual experience of mankind." We hold that there is no evidence, construing it most favorably to appellee, that appellant was negligent in failing to keep a watchman in and about said wash-house at all times, and in keeping it closed and locked up without leaving any person to watch in or about said building and premises, as alleged in the complaint.

Other errors are presented, but having reached the foregoing conclusion, we do not need to consider them. The judgment is reversed with instructions to the trial court to grant a new trial.