HERBERT R. BRANNAN, APPELLEE, V. CHICAGO & NORTH-WESTERN RAILWAY COMPANY, APPELLANT.

FILED MAY 25, 1929. No. 25699.

*Wymer Dressler, Robert J. Neely* and *Hugo J. Lutz,* for appellant.

*J. A. McGuire, Bartos, Bartos & Placek* and *Grant G. Martin, contra.*

Heard before GOSS, C. J., DEAN, GOOD, EBERLY and DAY, JJ., and REDICK and SHEPHERD, District Judges.

REDICK, District Judge.

Appeal by defendant from a judgment for plaintiff for $40,000 in an action for negligence. The case was presented at a prior term of this court and an opinion rendered January 16, 1929, affirming the judgment upon condition that a remittitur of $12,000 be filed within 20 days. A motion for rehearing was duly filed and allowed, the case reargued, and the same is now before us for final disposition.

Plaintiff entered the employ of the defendant in March, 1924, as a machinist, whose duty it was to repair engines, and continued in such employment until the day of his injuries, July 23, 1924, and for some time thereafter. The place of plaintiff's employment was the roundhouse of defendant at Chadron, Nebraska. The roundhouse was built in the usual form of a segment of a circle, partly surrounding a turntable by means of which engines were introduced into their respective stalls in the roundhouse. The turntable was of the usual construction and the roundhouse was provided with engine pits over which the engines were placed in order that convenient access might be had for the purpose of making repairs to the under portions thereof. These pits were about 60 feet in length and slightly less in width than the distance between the rails. Among these pits were two known as 24 and 25, which were intersected at right angles and connected by a drop pit about 3 feet deeper than the engine pit. At the point of intersection with the engine pit the drop pit was boarded over with

planks. The engine pit was provided with an outlet drain to the city sewer, such drain having a quarter-inch mesh iron screen at its inlet for the purpose of preventing rubbish from clogging the drain. The floor of the roundhouse was paved with wooden blocks which, and as is quite usual, exhibited some surface inequalities, by reason of which, at times, shallow pools of water existed thereon. Each stall was provided in front with folding doors and one with a drop door, all of which, in the summer time, remained open day and night. The engine pits were used, not only in the making of repairs to engines, but also for the purpose of cleaning and blowing out the boilers, the water from the boiler together with scale and mud from the engine tubes finding its way into the drop pit, from which the water was siphoned, and the debris cleaned out when necessary, generally about once a week. At times the screens over the drain inlets would become clogged and considerable quantities of water retained in the pits, which would then have to be siphoned out or the screens cleaned. In such event the drop pits and the debris therein would be wet, but the engine pits would remain reasonably dry and in fit condition for use.

The drop door at one end of the roundhouse did not fit closely to the sill and at times of rain some quantity of water would follow the sides of the rails and flow under the drop door, when closed, into the roundhouse, and find its way into pit 24.

The territory in front of the roundhouse and around the turntable was covered with cinders. There were some weeds permitted to grow at the ends and around the outside of the roundhouse, and about 300 feet to the rear there existed a swale in which, after rains, a shallow pond would be formed, with the usual wild vegetation surrounding it. In general, the territory surrounding the roundhouse was flat with numerous inequalities in which water would collect after a rain and evaporate.

The petition of the plaintiff is lengthy and much involved, and his claim will be best exhibited by an epitome thereof

contained in the brief of his counsel in the following language:

"Briefly stated, the plaintiff alleged that the defendant was negligent in permitting the grounds about its roundhouse to become wet and covered with pools of water, and weeds to grow therein and about its roundhouse; that its said premises next to said roundhouse and in the vicinity thereof for the distance of 150 yards and about 15 feet wide inclined and sloped toward the door of said roundhouse, which door was directly in front of the place where the accident happened; that the rainwater falling on the roof of said roundhouse was collected and discharged through eave gutters and eave troughs into a drainage pipe, which said drainage pipe was located immediately at said door and was maintained in a bad condition, in that it leaked rainwater and discharged the same on the premises immediately into said door and into said doorway and flowed into said drop pits 24 and 25; that said hanging door was so constructed that a space of something like two inches was left entirely open between the bottom thereof and the floor of said roundhouse and water was permitted to drain from said opening therein; that the floor of said roundhouse was so constructed that it sloped to the center of said roundhouse, causing said rainwater to flow into said roundhouse and into said drop pits 24 and 25; that the floor of said roundhouse was kept in an unsanitary condition in that large and deep holes in the same were permitted to exist in which large amounts of water accumulated and were permitted to remain in the immediate vicinity of said stalls 24 and 25; that debris, weeds, grass and rubbish were permitted to grow and remain on the premises which slopes toward said roundhouse, thus causing dirt, debris and weeds to become wet and damp from the waters permitted to flow on said premises, which made a place for snakes and vermin; that the defendant permitted said premises to remain in such condition, well knowing that the same was damp and wet, and by reason thereof attracted snakes and vermin; that defendant permitted the engine pits and drop pits to accumulate water,

mud and cinders, and permitted the drains therefrom to become clogged, so that for long periods of time said drop pits retained stagnant water both from the outside and the inside and thereby was made a fit place for snakes and vermin to infest and tenant; that the sewers were left uncovered and unprotected; that these conditions were all well known, or should have been known, to the defendant company, and by reason thereof said defendant failed and negligently disregarded its duty to furnish plaintiff a safe place to work and perform the duties required of him as a machinist; that, as a result of defendant's negligence, plaintiff, in the performance of his duties, was bitten by a snake and suffered the injuries complained of, which acts of negligence on the part of the defendant were the proximate causes of the injuries received by the plaintiff while in the performance of his duties."

Plaintiff claimed to have sustained injury by being bitten by a small snake 10 to 14 inches long which dropped into the gauntlet of his glove while he was in the engine pit about to make repairs to the engine; that the snake crawled into the palm of his hand and between the fingers and bit him on the upper side of the ring finger.

The answer of the defendant admitted that it was engaged in interstate commerce, that on July 23, 1924, plaintiff was employed as a machinist in the roundhouse which was used for storing, repairing and otherwise caring for locomotives of the defendant. Defendant, for want of sufficient information, denied that plaintiff was bitten by a snake, but alleged that, if so, "said bite was due to a hazard common to mankind, to wit, danger from wild or untamed creatures, and was a risk which plaintiff assumed wherever he might be and for which defendant is not liable." Defendant further alleged that the diseases of which plaintiff complained as consequent upon the snake-bite were a continuation of the same physical conditions which had previously existed, and not attributable to the snake-bite, if suffered. Defendant further alleged that it was deceived by the plaintiff's claim of snake-bite and his concealment of

his previous physical condition, and expended about $4,600 in the treatment of plaintiff, for which amount it prayed judgment by way of cross-petition. Plaintiff replied denying in general the allegations of new matter in the answer.

Plaintiff prayed for damages in the sum of $65,000, the jury allowed him $40,000, and by the former opinion of this court the judgment was reduced to $28,000. The appeal is by the defendant.

Reduced to its legal terms, the claim of the plaintiff is for negligence of the defendant in negligently failing to provide the plaintiff with a safe place to work, and the theory and basis for this claim is well exhibited by a hypothetical question propounded to the witness, Dr. D. D. Whitney, a professor of zoology in the state university, in the following language:

"Q. Now, Doctor, from what you have told us about the places that those water snakes like to infest, assume a place like this, a large roundhouse, which is situated in a low part of the country, this roundhouse having 27 or 28 large double doors which are open day and night, and that there are rails and tracks in and out of each one of those doors, and that in this roundhouse practically every hour of the day there are used large quantities of water so that the interior of this roundhouse is damp more or less all the time, and that in this roundhouse there are several large pits constructed of concrete which are of a length of 60 to 90 feet, about 8 feet wide, and 3½ feet deep, and that on some of these pits are constructed at right angles what are known as drop pits, which are 7 or 8 feet deep, and that in those drop pits there has been allowed to remain for sometimes a week at a time water, sometimes nearly to the top of this drop pit, and that the territory immediately outside of this roundhouse is so drained that rainwater from the outside drains into one of these drop pits that I have described, and that on the outside of this roundhouse there are permitted to grow large weeds within a few feet of the door of this roundhouse, and that about a block away from the roundhouse is a large marshy place about a block in area, and

that within 20 or 30 feet of the roundhouse after large rains there are sometimes pools of water 30 or 40 feet in area and several inches deep, and that this lagoon marsh is 300 or so feet from the roundhouse, and that about a half mile away is a creek, and that at various times there have been seen in this roundhouse and on the outside garter snakes and other kinds of snakes and that there have been seen there salamanders and frogs, and on one occasion a muskrat was even seen there, and that this condition existed about ten days after a large rain and hail storm: Have you an opinion as to whether that would be such a place as a water snake would be found?"

The question was objected to for no sufficient foundation and not a proper subject for expert testimony, which objection was overruled and the witness answered:

"A. Well, the presence of a snake would depend on the food supply a great deal. If food was available, also your water. Those water snakes, feed and water would determine a good deal the location of the snake. If there was plenty of water in sight and plenty of food, it would be a favorable place for the water snakes. Q. Assuming, as I said, that there had been innumerable frogs seen around there and salamanders? A. Yes, that would indicate the food supply. Q. And would a snake such as you have described be more likely to go to such a place than it would if this place was kept dry from weeds and water? A. He would be more likely to stay there if there were water there; it might be difficult to say whether he would go there or not."

Reduced to its simplest terms, the claim of the plaintiff is that the defendant was negligent in maintaining the above described conditions in and surrounding the roundhouse, which are said to constitute an invitation to the snake to enter the roundhouse and inhabit the place where plaintiff was required to work, thereby subjecting him to being bitten.

The evidence of plaintiff tends to establish the conditions above described, and in addition that "frogs, water puppies,

salamanders and lizards," especially after heavy rains, were seen in considerable numbers in and surrounding the roundhouse. Their presence was unaccounted for except that one witness gave it as his opinion they came down with the rain. Railroad corporations undoubtedly have great power and influence, but we have serious doubt that they extend to the production of animal life or its prevention. There is a vast amount of evidence of a similar character which we deem it unnecessary to notice. As to the presence of snakes, the plaintiff testified that in May, 1924, he saw a blue racer sliding out of the roundhouse, and on July 20, following, he and his helper killed a snake about 18 inches long in stall No. 12, and on July 23 the snake by which he claims to have been bitten, which he called a water moccasin, but which the evidence tends to show must have been an ordinary water snake or garter snake which inhabits that territory. These snakes are nonpoisonous and harmless except under provocation. He also testified that two or three times a week he would see a little garter snake dodge under the corner of the wash-house, an outbuilding outside the roundhouse. Another witness testified that during his employment at the roundhouse, covering 18 years, he had seen two or three or four snakes, one in the fall of 1924, but none in the last 4 or 5 years. There was other evidence of snakes having been seen in the vicinity, but none in the roundhouse about the time in question except the three mentioned by the plaintiff. At the close of all the evidence the defendant moved the trial court to instruct the jury to return a verdict for the defendant, which motion was overruled, such ruling presenting the principal assignment of error relied upon for reversal.

It is the contention of the defendant that the evidence is insufficient to support the verdict, for the reason that no actionable negligence of the defendant is shown which is the proximate cause of plaintiff's injuries. Of course, in the determination of this question it is well established that such facts favorable to the plaintiff as the evidence reasonably tends to prove are to be considered as established,

and that the plaintiff is entitled to credit for all inferences which the jury, as reasonable men, may properly draw from such facts. This, however, does not include facts or inferences clearly refuted by the evidence in the case, such as, for example, the claim of plaintiff that the roundhouse was located in a swamp, or that there was a rain of two inches on July 10. The evidence clearly fails to establish either of these propositions, and, with reference to the latter, the records of the weather bureau show that only .50 of an inch of rain fell from the 7th to the 13th, .05 on the 23d, a trace on the 28th, and .04 of an inch on the 30th of July. The evidence fails to establish any connection between the rains and conditions in the roundhouse at the time of the accident. We take judicial notice that late July is ordinarily a dry, hot season in this climate, and the amount of rainfall shown was entirely inadequate to produce a swampy condition, or appreciably increase damp conditions in the roundhouse.

It is conceded that under the federal employers' liability act by which we are governed, a railroad company is not liable for injury to its employees except for negligence proximately causing such injuries. It is not contended by plaintiff, and, if it were, such contention would be untenable, that the mere presence of a snake in the roundhouse, not proved to be due to any negligent act or omission of the defendant, would support an action by plaintiff. He therefore attempts to show such negligence by the existence of the conditions in and surrounding the roundhouse as above described; his argument being that because of such condition the snake was attracted to the roundhouse and invited there by defendant. This is the crucial point of plaintiff's case and must be established by evidence of facts which warrant the jury in drawing the inference suggested. It is not sufficient to show a mere possibility or probability that the snake in question was attracted by the conditions, but the evidence must be such as points to the suggested inference as the proper one logically to be drawn from the facts proved. As was held in *Patton v. Texas & P. R. Co.,* 179 U. S. 658: "It is not sufficient for the employee to show

that the employer may have been guilty of negligence. The evidence must point to the fact that he was. And where the testimony leaves the matter uncertain, * * * it is not for the jury to guess between these half a dozen causes and find that the negligence of the employer was the real cause, when there is not satisfactory foundation in the testimony for that conclusion." In that case a step on the engine was loose, but the evidence failed to disclose how it became loose, such condition being the negligence charged. In other words, the inference may not be based upon mere conjecture or guess, but requires some logical basis for its support.

It is a matter of common knowledge that snakes do enter houses under varying conditions. Doubtless the dominating factor in every case is a desire for food, and instinct may direct the snake in its search to a place more likely than others to bring results; but it would seem to be quite impossible to discover by what factors a snake was governed in selecting a particular place for his journey. What is there in all this evidence tending to authorize the inference that the snake was attracted to the roundhouse by reason of the fact that the drop pits were not cleaned out more than once a week, or by the presence of frogs, salamanders, and so forth, in the vicinity of the roundhouse, as against an inference that in his search for food he entered the roundhouse the same as any wild animal might have done? The evidence merely shows a *possibility* that the snake *might* have been attracted by those conditions. It does not show even a slight probability in that regard. Plaintiff's expert naturalist, Dr. Whitney, was unwilling to say that a snake would be so attracted. The farthest he would go was that it would remain where water and food were abundant. On the other hand, Naturalist Cook, called by defendant, said it was "most extremely unlikely" that a snake would be attracted by the conditions surrounding the roundhouse, and "highly improbable and almost certainly impossible" for a snake to gain entrance through the sewer. When circumstantial evidence is relied upon to prove a fact, the circum-

stances must be proved and not themselves presumed. *Chicago, M. & St. P. R. Co. v. Coogan*, 271 U. S. 472. The circumstances proved are the damp conditions at the round-house and that such conditions are attractive to snakes. The fact to be proved is that the snake in question was so attracted. On this the evidence is silent and the existence of the fact rests upon presumption and conjecture only.

It seems to us that the selection of one inference in preference to the other is a matter of pure conjecture. Suppose a man is found at an airport and the pivotal question to be determined is how he arrived there, whether by aeroplane, automobile or walking? Would evidence that the port was particularly adapted to landing aeroplanes, that more aeroplanes than other type of vehicle landed there; that the roads for automobiles were inconvenient or in bad condition, or that the port was at so great a distance from any other point that it was burdensome and very unusual for any one to walk there, tend in any manner to establish the precise mode of the man's arrival? Would the facts set forth warrant the inference that he came in one of the particular modes rather than the other? The probabilities might favor the aeroplane, but an allegation that he traveled by that means would remain unproved.

It clearly appears that the conditions present in the roundhouse, so far as the existence of water in the drop pits and on the pavement is concerned, were the natural consequences of the transaction of the railroad business therein, except as they may have been temporarily aggravated in some degree by occasional rains. The process of washing out engines necessarily caused water to flow in the pits, and other activities, at times, accounted for water on the floor, which might remain for a time due to small inequalities. In so far as such conditions may have operated to attract a snake is concerned, it would appear to carry the doctrine of master and servant to an absurd degree to hold the master responsible for consequences of the ordinary and proper conduct of his lawful business. We think that no one would contend that a butcher would be responsible in

damages if a stray dog, attracted by the meat hanging on hooks in the butcher shop, should enter and bite a customer upon the leg, because of the failure of the butcher to keep the door of his shop closed or screened in the summer-time. Nor would the proprietor of a flower store be liable in damages to a customer who was stung by a bee which entered his shop attracted by the floral display. Would a host be liable to his guest, sitting on the lawn, where a stray dog, attracted by a female dog of the host, entered the yard and bit the guest, because there was no fence or the gate had been left open? In all these instances the proposed defendant owed a duty to exercise ordinary care to protect the invitee from injury while on the premises. If the existence of water and debris in the pits and upon the floor at times is the ordinary result of the proper conduct of the business of the roundhouse, as appears from the evidence, and plaintiff's theory is correct that such conditions attracted the snake, we think it must be conceded that such conditions would not convict the railroad company of actionable negligence. The risk of injury in such case would be an ordinary one arising out of the nature of the servant's employment and assumed by him.

The evidence shows that 144 engines were washed out over the pits in July, six of them on the 23d. How can it be logically claimed that, because at some particular time there was more water and debris than at others, the snake was attracted by the excess and an inference of negligence permitted? At what point is the line to be drawn by the jury, or by what standard may the question be determined between liability and nonliability? May the jury say that the railroad company is not liable for a few gallons of water and a wagon load of debris, but is responsible when the water and the debris exceed those amounts? It seems to us the question carries its own answer. In a case where the negligence charged was the failure to provide more than one guard against strikers, it was held "that the jury should not have been allowed to conjecture what might have happened if an additional guard had been present." *St. Louis & S. F. R. Co. v. Mills*, 271 U. S. 344. So here the jury should not

be permitted to guess that the snake would not have been attracted if the pits had been oftener cleaned and the water prevented from standing on the floor. It is not claimed that defendant knew of the presence of the snake which plaintiff claims bit him, but that it ought to have known of the possibility of it being there and prevented it; but, as was said in *Chicago & E. R. Co. v. Dinius*, 170 Ind. 222, 231, one is not negligent in failing to take precautions against an event that "is only remotely and slightly probable." "A wrong-doer cannot be held responsible for a consequence which is merely possible according to occasional experience, but only for a result or consequence which is probable according to the ordinary and usual experience of mankind"—citing cases.

The claim of the plaintiff that the roundhouse was infested by snakes finds no support in the evidence to warrant such a characterization. The snakes must have been so numerous as to have become annoying or dangerous. The evidence as to the number of snakes in the roundhouse will not fit the definition of that word. Only one witness besides plaintiff ever saw a snake in the roundhouse and that four or five years before the trial.

The plaintiff, doubtless, recognizing the remarkable character of his claim against the defendant, sought by the allegations of his petition to suggest the manner in which the entrance of snakes to the roundhouse might have been prevented by alleging the defendant disregarded its duty "in not furnishing and erecting proper screens, gates or other barriers covering said roundhouse, sewers and pits, so as to keep out all reptiles and snakes, which it was the duty of the said defendant to furnish and maintain." Of course, the plaintiff would not have suffered his injury if the round-house or the pits had been surrounded by a snake-tight screen or barrier, for in such case it could not have been used and plaintiff would not have been employed therein. This is absurd. It is further suggested that the screens at the outlet of the engine pits were sometimes left off and that, when they became clogged, holes would be punched in

them half an inch in diameter for the purpose of clearing them; and it is suggested that the snake which bit the plaintiff might have entered the roundhouse by way of the sewer which had its final outlet in a river a mile and a quarter distant. This might furnish a slightly probable explanation of the presence of the snake, but the probability and even the possibility of such is clearly negatived by the evidence as to the character of the contents of the sewer, being dirty and extremely hot water from washed-out engines with a covering of oil and impregnated with soda ash and other chemicals used in the washing process; and in addition he would have to pass through a series of septic tanks maintained by the city of Chadron. It would seem to the ordinary mind not to be reasonably possible to absolutely prevent the entrance of a snake into a building, the ordinary uses of which required the doors to be kept open 24 hours a day. So far as preventing the entrance of the snake is concerned, the evidence suggests no reasonable method. When there is no evidence that it was feasible or practicable by the exercise of ordinary care to prevent the injury, there is no liability. *Conklin v. Central N. Y. T. & T. Co.*, 130 App. Div. (N. Y.) 308. For aught that appears in the evidence, we are compelled to the conclusion that the snake got into the roundhouse in some manner unexplained and unexplainable.

Upon a careful reconsideration of all the evidence, we have reached the conclusion that actionable negligence of the defendant has not been established. It will, therefore, be unnecessary to consider other matters presented by the record. We are further of the opinion that a retrial of the case would be of no benefit to the plaintiff. It follows that the former opinion in this case is set aside, judgment of the district court is reversed, and case dismissed.

REVERSED AND DISMISSED.

EBERLY, J., dissents.