Raymond CONDER and Wanda Conder,
Appellants-Plaintiffs,

v.

HULL LIFT TRUCK, INC. and
Allis-Chalmers Corporation,
Appellees-Defendants.

No. 3–377A71.

Court of Appeals of Indiana,
Fourth District.

June 5, 1980.

Alexander Lysohir, Thomas H. Singer, Lysohir & Singer, South Bend, Gene R. Duffin, Goshen, for appellants-plaintiffs.

Roland Obenchain, R. Kent Rowe and Lewis C. Laderer, Rowe, Sweeney, Simeri & Laderer, South Bend, for appellees-defendants.

CHIPMAN, Judge.

This appeal involves a product liability action brought by appellants Raymond and Wanda Conder for injuries sustained by Raymond when a forklift truck he was riding overturned. The jury's verdict was in favor of the leasing agent, Hull Lift Truck, Inc., and the manufacturer, Allis-Chalmers Corp. The Conders appeal, raising the following issues for our review:

1. Was the verdict in favor of Hull Lift Truck, Inc. contrary to law,

2. Did the trial court err in giving the following instructions offered by Allis-Chalmers:

 a. Instruction No. 4, which said a manufacturer is not required to foresee that its product will be substantially changed,

 b. Instruction No. 5 which told the jury that under the law of strict liability, Allis-Chalmers was not a guarantor in regard to the quality of its product.

 c. Instruction No. 7, which said if the sole proximate cause of the plaintiff's injury was the plaintiff's own conduct, the verdict should be in favor of Allis-Chalmers,

 d. Instruction No. 8 on superseding cause, and

e. Instruction No. 10 which said Allis-Chalmers was not required to warn of dangers resulting from misuse or substantial change of its product;

3. Whether the trial court erred in refusing to give the following jury instructions offered by Conders:

a. Instruction No. 9 on willful and/or wanton misconduct, and

b. Instruction No. 19 defining "substantial change" as that term relates to strict products liability law.

Affirmed in part, reversed and remanded in part.

## FACTS

On August 24, 1972, Raymond Conder was operating a forklift truck which his employer, Globemaster Mobile Homes, had leased from defendant Hull Lift Truck, Inc. (Hull). The forklift was manufactured by the defendant Allis-Chalmers Corporation. As Conder was driving outside the Globemaster factory, he approached a rough area in the road where rain water had created a small washout. Although Conder took his foot off the accelerator pedal in order to decelerate, it did not release. His first reaction was to attempt to use his right foot to "unstick" the peddle, but his efforts failed. Traveling at approximately seven (7) miles per hour, (the vehicle's top speed in low gear) the forklift entered the washed-out area of the road and tipped over, landing on Conder and pinning him to the ground. The resulting injuries caused the plaintiff to be a paraplegic.

On September 11, 1972, Joseph Bokon, a mechanic, examined the forklift truck to determine whether there had been a mechanical failure or whether Conder's accident had been caused by human error. His examination disclosed that the linkage between the truck's governor and carburetor, specifically the part of the linkage referred to throughout the record as the "adjustable governor control arm", had been misadjusted. It was this misadjustment in the governor linkage which allowed the governor to work just the opposite of its intended function, i. e., instead of slowing the vehicle down, the governor caused the forklift's carburetor to run "wide open," resulting in acceleration to maximum R.P.M. Bokon also found a torsion spring on the carburetor was broken; this spring would have prevented the governor malfunction had it not been in the state of disrepair, notwithstanding the maladjusted governor control arm.

Other evidence showed the forklift in question was leased by Hull to Globemaster on August 17, 1972, eight days before Conder's accident. No maintenance was performed, nor were any adjustments made by Globemaster on the forklift during this period. According to the Globemaster-Hull lease agreement, all maintenance, when necessary, was to be performed by Hull.

Conder used the forklift on the 17th, and had no trouble with the accelerator pedal. Between August 17 and August 24, Conder did not hear of any other Globemaster employee having problems with the forklift's accelerator pedal; however, unbeknownst to Conder, two other employees had in fact experienced the very same uncontrolled acceleration problem between the 17th and the 24th. Unfortunately, no one communicated this fact to Conder.

Conders brought this action based upon theories of strict liability, negligence and willful and/or wanton misconduct. As against Allis-Chalmers, Conders claimed the forklift's design was defective and unreasonably dangerous in two respects: 1) a foreseeable misadjustment of the governor linkage resulted in uncontrolled acceleration, and 2) no warnings were issued to advise of this potential hazard. Conders also alleged Allis-Chalmers was negligent in its design of the forklift and in its failure to warn of the hazards of linkage misadjustment. In a third count, plaintiffs accused Allis-Chalmers of willful and wanton misconduct for failure to warn of the hazard in question.

As against Hull Lift Truck, Conders claimed the forklift truck was defective and unreasonably dangerous in that the torsion spring on the carburetor was either defec-

tive and/or broken when delivered to Globemaster, and the carburetor-governor linkage was grossly out of adjustment. Plaintiffs also alleged Hull negligently maintained the forklift, and negligently trained its mechanics.

The case was tried by a jury, which returned a verdict in favor of both defendants. Conders' Motion to Correct Errors was overruled on December 27, 1976, and this appeal follows.

## I. VERDICT FOR HULL LIFT TRUCK, INC.

■ Conders argue the verdict rendered in favor of Hull is contrary to law for the reason that uncontradicted evidence shows Hull was strictly liable for injuries caused by the defective and unreasonably dangerous condition of the forklift. As this is an appeal from a negative verdict, this court cannot reverse as to Hull unless the evidence is without conflict and leads to only one conclusion, the trial court reached a contrary conclusion, and reasonable men could not have found as the trial court did. *Clarke Realty, Inc. v. Clarke*, (1976) Ind. App., 354 N.E.2d 779; *Columbia Realty Co. v. Harrelson*, (1973) 155 Ind.App. 604, 293 N.E.2d 804. We find there was a question of fact for the jury which precludes our reversal.

Conders argue each of the following elements of strict liability were established by the evidence as a matter of law:

1. Defendant Hull was in the business of leasing forklift trucks and did lease a forklift truck which was expected to and did reach the plaintiff Raymond Conder in substantially the same condition as it was leased to his employer.

2. Conder was the user of the forklift.

3. The forklift was in a defective condition and unreasonably dangerous when it left the possession of Hull.

4. The damages Conder claimed were proximately caused by the product's defective condition.

We agree there was overwhelming, uncontradicted evidence to prove the forklift's governor-carburetor linkage was misadjusted at the time the machine was leased to Globemaster. Therefore, the forklift was clearly defective and unreasonably dangerous. The evidence also shows the maladjustment was a cause in fact of the plaintiff's accident. However, we find there was a question of fact which remained for the jury concerning the issue of proximate cause.

■ Most courts have held the normal proximate cause rules limiting liability to the foreseeable consequences of an action operate in the products liability area as in tort law generally. *See, e. g., Bemis Company, Inc. v. Rubush*, (1980) Ind.App., 401 N.E.2d 48; *Dudley Sports Co. v. Schmitt*, (1972) 151 Ind.App. 217, 279 N.E.2d 266; *see generally* 1 L. Frumer and M. Friedman, Products Liability § 11.02 (1976). Proximate cause is established if the injury caused by the defendant is a natural and probable consequence which was, or should have been, reasonably foreseen or anticipated in light of attendant circumstances. *P.H. and F.M. Roots Co. v. Meeker*, (1905) 165 Ind. 132, 73 N.E. 253; *Lake Erie and W.R. Co. v. Charman*, (1903) 161 Ind. 95, 67 N.E. 923. Accordingly, an intervening cause, e. g., the act or omission of a third party, will not operate to defeat a recovery from the defendant if the intervening cause would necessarily, or might reasonably, have been foreseen by the defendant. *Shanks v. A.F.E. Industries, Inc.*, (Ind.App. 1980), 403 N.E.2d 849; *Dudley, supra; Zahora v. Harnischfeger Corp.*, 404 F.2d 172 (7th Cir. 1968). However, in some instances, the unforeseeable intervening negligent acts of a third party constitute a superseding cause which relieves the defendant of responsibility for the plaintiff's injuries. *See, e. g., General Motors v. Jenkins*, (1966) 114 Ga.App. 873, 152 S.E.2d 796; *Ford Motor Co. v. Wagoner*, (1946) 183 Tenn. 392, 192 S.W.2d 840. The case of *Balido v. Improved Machinery, Inc.*, (1973) 29 Cal. App.3d 633, 105 Cal.Rptr. 890, is representative of the problem which arises when the issue of intervening causation surfaces in a strict products liability action.

In *Balido*, the plaintiff, an employee of the Olympic Plastics Company, was injured when a defective molding press closed on her hand. The press had been manufactured by Improved Machinery fourteen years prior to the accident. Before the accident occurred, however, Improved notified Olympic that operators of similar presses were being injured and offered to install safety devices to prevent such injuries. Unfortunately, Olympic chose not to pursue the matter; had the safety equipment been installed, plaintiff Balido would not have been injured. Reversing the decision of the trial court, which directed a verdict in favor of Improved, the California Appellate Court held that the extent to which designers and manufacturers of dangerous machinery are required to anticipate safety neglect presented a question of fact for the jury. It was inappropriate for the lower court to hold Olympic's failure to install the safety device constituted a superseding intervening cause as a matter of law.

As in *Balido, supra,* the question concerning the foreseeability of intervening third party misconduct is most often held to be a question of fact for the jury's determination. *See, e. g., Sills v. Massey-Ferguson, Inc.,* 296 F.Supp. 776 (N.D.Ind. 1969); *Zahora, supra; Guffie v. Erie Strayer Co.,* 350 F.2d 378 (3rd Cir. 1965).

In the present case, Leroy Graber, a foreman of the receiving department at Globemaster, testified he had primary responsibility for calling a Hull Lift service man when a rented forklift required maintenance. Under the Globemaster-Hull lease agreement, maintenance was to be performed by Hull. Graber testified that during the week prior to Conder's accident, he (Graber) experienced the same over-acceleration problem with the forklift, but was able to stop the machine before an accident occurred. Doyle Weaver, another forklift driver at Globemaster, also experienced the same over-acceleration problem, and informed Graber of this fact. Graber, unfortunately, did nothing to remedy the situation. Because the receiving department was exceptionally busy during the week in question, Graber decided to delay any maintenance on the forklift. The following testimony is particularly revealing:

"Q. And, Mr. Graber, how was this accelerator problem on that truck supposed to be remedied?

A. The forklift was a rental and I hadn't—I was just hoping that the forklift wasn't around very long.

Q. I see. Mr. Graber, how was Hull Lift Truck supposed to find out about any problems with that Allis-Chalmers if you didn't call them and tell them?

A. Usually we have a slow spot or maybe a slowdown that I try to get maintenance done on these fork lifts, and that was probably the time when I would have tried to correct it or call somebody or—

Q. Wait sometime until it would be more convenient or less inconvenient for the company to call Hull Lift and say, 'We have got an accelerator sticking on your tractor. Could you come out and find out what is the matter?'

A. Yes, sir."

Not only did Graber fail to call Hull and request maintenance for the forklift, he also failed to even warn Conder of the problem of over-acceleration, despite the fact he knew Conder was using the machine.

■ Had Graber requested maintenance for the forklift, or at least warned the plaintiff of the hazard associated with its operation, the accident could have been avoided. The jury may well have found this failure to act on the part of Globemaster's foreman, once the hazardous condition of the forklift became apparent, constituted an unforeseeable intervening cause of the plaintiff's accident, thereby insulating Hull from liability. Proximate cause in this case was clearly a question of fact for the jury and for this reason the jury verdict must remain undisturbed.

## II. DEFENDANT ALLIS–CHALMERS' INSTRUCTIONS

### A. Substantial Change

Allis-Chalmers' Instruction No. 4 told the jury the manufacturer of a product is not required to anticipate or foresee that its product will be substantially changed. Plaintiffs objected to this instruction on the grounds that it was an incomplete statement of the law; specifically, Conders argued the instruction failed to incorporate the element of foreseeability.

■ It is well established that a substantial change in a product which causes injury to the plaintiff constitutes a defense for the manufacturer. *Cornette v. Searjeant Metal Products, Inc.,* (1970) 147 Ind. App. 46, 258 N.E.2d 652. In his concurring opinion in *Cornette,* Judge Sharp defined substantial change as:

> "Any change in the product which would be of such nature not reasonably foreseeable to the manufacturer and which contributes to the defect which causes injury . . . ."

258 N.E.2d at 665. While Allis-Chalmers' Instruction No. 4 did not explicitly refer to the element of foreseeability, Plaintiffs' Instruction No. 8 did do so. This instruction stated:

> "The fact there was a change in the fork lift truck once it left the factory of Allis-Chalmers Corporation and before the time Raymond Conder was injured by it does not necessarily relieve Allis-Chalmers Corporation of liability. A manufacturer of a fork lift truck may be liable for injuries suffered by the user of the truck in spite of the fact that it was later changed or altered *if the manufacturer could reasonably expect or foresee that the change or alteration might be made and foresees that the change or alteration might render the fork lift truck unsafe.*" (emphasis added)

Therefore, Allis-Chalmers' Instruction No. 4, when read together with Plaintiffs' Instruction No. 8, adequately informed the jury as to the law concerning substantial change of a product. The lower court did not err in giving defendant Allis-Chalmers' Instruction No. 4.

### B. Product Quality

Allis-Chalmers' Instruction No. 5 told the jury that under strict liability, a manufacturer is not a guarantor in regard to the quality of its product. Conders objected to this instruction on the grounds that the doctrine of strict products liability was in part adopted for the purpose of re-enforcing reasonable consumer expectations of product safety. We agree the instruction should not have been given.

■ One of the major policy bases advanced for the adoption of strict products liability has been aptly referred to as the "representational liability" rationale.[1] The representational liability theory is based upon the assumption that the manufacturer creates a representation that its product is reasonably safe for its intended use by placing the product on the market. The ordinary consumer is not aware of, nor can he appreciate, the importance of safety aspects of any particular design. Moreover, consumers generally have no way of knowing how much more they would have to pay to obtain a comparable product as serviceable and less hazardous. Even when aware of the risk associated with a product, the consumer cannot predict the frequency, severity or probability of injury. The idea is to protect the normal safety expectations of the typical consumer.

■ It is clear, therefore, that under strict liability the manufacturer, by law, does guarantee that his product is reasonably safe for its intended and foreseeable use. The quality of the product is on trial. To the extent Allis-Chalmers' Instruction No. 5 informed the jury otherwise, it was erroneous.

---

1. *See* Prosser, *The Assault on the Citadel,* 69 Yale L.J. 1099 (1960); Shapo, *A Representational Theory of Consumer Protection: Doctrine, Function and Legal Liability for Product Disappointment,* 60 Va.L.Rev. 1113 (1974).

Allis-Chalmers argues this instruction did nothing other than tell the jury a manufacturer is not liable for every injury caused by its product, i. e., a manufacturer is not an insurer against all accidents. However, we cannot ignore the fact this instruction made specific reference to *product quality.* Moreover, in Allis-Chalmers' Instruction No. 2, the trial court informed the jury that a manufacturer is not an insurer against all accidents:

"When I say that the law makes a manufacturer 'strictly liable' to another, I do not mean that such manufacturer is in every case and at all times legally responsible to another for injuries or danger resulting from the manufacture or sale of a product."

The trial court erred in giving Allis-Chalmers' Instruction No. 5.

## C. Plaintiff's Conduct as Sole Proximate Cause

■ Allis-Chalmers' Instruction No. 7 told the jury that if the plaintiff's own conduct was the sole proximate cause of the plaintiff's injuries, the verdict should be for Allis-Chalmers. Conders argue there was no evidence to support this instruction, and the instruction was misleading to the extent it allowed the jury to consider the conduct of the plaintiff as a bar to recovery. We find this instruction was potentially misleading and should not have been given.

Allis-Chalmers argues that to conclude Raymond Conder's own conduct was the sole proximate cause of his injury is tantamount to saying Allis-Chalmers was not responsible under theories of negligence or strict liability. However, there is no evidence in this case to support a finding that *Conder's own conduct* was the "sole proximate cause" of his injuries so as to bar a recovery from Allis-Chalmers. Conder did not alter the condition of the forklift, nor did he misuse the machine. There was absolutely no evidence to show the plaintiff knowingly and voluntarily incurred the risks involved. While the jury was instructed that contributory negligence was not a defense in a strict liability action, Allis-Chalmers' Instruction No. 7 unneces-

sarily and erroneously directed the jury's attention to the conduct of the plaintiff and away from what should have been the focal point of this case, the product. The issues of causation in this case were difficult enough without this potentially misleading reference to the plaintiff's conduct. We hold it was error to give Allis-Chalmers' Instruction No. 7.

## D. Superseding Cause

■ Allis-Chalmers' Instruction No. 8 correctly informed the jury of the law concerning intervening causation. Appellants objected on the grounds there was no evidence to support such an instruction. As we have stated in our discussion of Issue I, there was evidence that Globemaster's receiving foreman failed to have corrective service performed on the forklift in question and failed to warn Conder of the risk associated with operation of the vehicle. We therefore hold the trial court properly gave Allis-Chalmers' Instruction No. 8 on intervening cause.

## E. Duty to Warn

■ Perhaps most disturbing is Allis-Chalmers' Instruction No. 10, which told the jury Allis-Chalmers was not required to warn of dangers associated with the misuse of its product. As argued by Conders, this instruction was an inaccurate statement of Indiana law and was therefore erroneously given.

In the early case of *Evans v. General Motors Corp.,* 359 F.2d 822 (7th Cir. 1966), the Seventh Circuit, applying Indiana law, took an extremely narrow view of product use. In *Evans,* the plaintiff sued the manufacturer of an automobile in which her husband was killed as a result of a collision. She argued a defect in the design of the car increased the severity of her husband's injuries. The Seventh Circuit affirmed the dismissal of the plaintiff's action, holding the intended purpose of an automobile did not include participation in collisions.

*Evans* was subsequently overruled in *Huff v. White Motor Corp.,* 565 F.2d 104 (7th Cir. 1977), the court categorizing its

prior holding in *Evans* as "unrealistically narrow", 565 F.2d at 108. Huff recognized the need for a manufacturer to anticipate the environment in which its product will be used and the reasonably foreseeable risks which its use in the environment entails. *Accord, Shanks v. A. F. E. Industries, Inc., supra.*

While *Huff* is a so-called "second collision" case, the *Huff* rationale, i. e., the environment in which a product is used must be taken into consideration by the manufacturer, is wholly apposite to a discussion of product misuse and a manufacturer's duty to warn.

The environmental approach to product use assumes a manufacturer markets a product for an intended use. This is not to say, however, that in considering design alternatives, including various instructions and warnings, a manufacturer may simply close his eyes to hazards associated with foreseeable misuse of the product. Accordingly, the defense of misuse is available only when the product is used in a manner not reasonably foreseeable. *Perfection Paint & Color Co. v. Konduris,* (1970) 147 Ind.App. 106, 258 N.E.2d 681; *Cornette, supra,* (concurring opinion). Similarly, the failure to warn of hazards associated with foreseeable misuse of a product may render the product unreasonably dangerous. *Wolfe v. Ford Motor Co.,* (1978) Mass.App., 376 N.E.2d 143; *Frey v. Montgomery Ward & Co., Inc.,* (1977) Minn., 258 N.W.2d 782; *Featherall v. Firestone Tire and Rubber Co.,* (1979) Va., 252 S.E.2d 358; *Gierach v. Snap-On Tools,* (1977) 79 Wis.2d 47, 255 N.W.2d 465.

To require manufacturers to consider product design in light of foreseeable product misuse, and to warn of hazards associated with foreseeable product misuse, is con-sonant with another major policy basis advanced for the adoption of strict products liability: the safety incentive rationale.[2] This rationale assumes it is in the public interest to fix financial responsibility for a product injury wherever it will most effectively reduce hazards to life and health inherent in products that reach the market. *Escola v. Coca-Cola Bottling Co.,* (1944) 24 Cal.2d 453, 150 P.2d 436 (Traynor, J. concurring). When product misuse and its attendant risks is reasonably foreseeable, the manufacturer is in the best position to avoid product related injuries through safety design.

Allis-Chalmers argues the term "misuse" as used in Instruction No. 10 "implies a lack of foreseeability." However, there is nothing in the wording of this instruction which directs the lay juror to consider the element of foreseeability;[3] indeed the jury may well have applied the usual and much narrower lay definition of misuse (i. e., improper use, abuse, or abnormal use) without considering the uses of the product in the environment which should reasonably have been foreseen by the manufacturer.

Allis-Chalmers also argues that regardless of the correctness of the instruction, as a matter of law, the alleged failure to give adequate warnings covering the hazard caused by misadjustment of the governor-carburetor linkage could not be considered a cause of the plaintiff's injuries. Allis-Chalmers directs our attention to the testimony of Robert Slabaugh, the mechanic employed by Hull who was in charge of periodic maintenance on the forklift vehicle involved in the plaintiff's accident. Slabaugh testified he did not rely on any Allis-Chalmers manual when servicing the forklift and needed no warning as to the hazard of over-acceler-

---

**2.** *See* Halford, *The Limits of Strict Liability for Product Design and Manufacture,* 52 Tex.L. Rev. 81 (1973); Wade, *On the Nature of Strict Liability for Products,* 44 Miss.L.J. 825 (1973).

**3.** Allis-Chalmers' Instruction No. 10 reads as follows:

"Ladies and gentlemen of the jury, I instruct you that with respect to the theories of negli-gence and/or strict liability, the defendant, Allis-Chalmers Corp., as a manufacturer, in preparing instructions or warnings regarding its product was not required to warn of potential dangers resulting from the misuse or substantial change of such products by others."

ation associated with a misadjustment of the governor-carburetor linkage. Therefore, argues Allis-Chalmers, a failure to warn could not have been a cause in fact of Conder's accident.

However, the record does not bear out the contention that Slabaugh was the last Hull employee to service the forklift in question. There is evidence that the forklift was last serviced June 30, 1972, and Slabaugh admitted he did not do that work.

 In Indiana, there is a rebuttable presumption that a sufficient warning would have been heeded. *Nissen Trampoline Co. v. Terre Haute First National Bank*, (1975) Ind.App., 332 N.E.2d 820, rev'd on procedural grounds, 265 Ind. 457, 358 N.E.2d 974 (1976). Even if the jury believed Slabaugh was the last Hull employee to service the forklift in question, they were entitled to discount Slabaugh's rather speculative testimony concerning the effect a warning would have had on his maintenance procedure. This issue of causation was ultimately a question of fact for the jury.

## III. PLAINTIFFS' INSTRUCTIONS

### A. Willful and/or Wanton Misconduct

Plaintiffs' Instruction No. 9, which was refused by the trial court, related to their theory that Allis-Chalmers engaged in willful and wanton misconduct when it failed to issue warnings concerning the hazards associated with misadjustment of the forklift's governor-carburetor linkage. The instruction read, in relevant part:

"Willful or wanton misconduct means a course of action on the part of the defendant Allis-Chalmers Corporation which under existing conditions, show either an utter indifference or conscious disregard for the safety of others. Thus if you find that the defendant Allis-Chalmers Corporation had actual knowledge that the design of its forklift truck was defective in that it did foresee that there was a hazard which could result from foreseeable misadjustments during the course of anticipated maintenance, and

that it knew that some personnel that would be servicing and maintaining said unit would not recognize or appreciate the hazard resulting from the misadjustments in question, and that the defendant Allis-Chalmers Corporation deliberately and intentionally did not warn of the hazard in question, then you may find that Allis-Chalmers Corporation was guilty of willful or wanton misconduct."

Appellants argue there was sufficient evidence to support this instruction and it therefore should not have been refused. Allis-Chalmers argues this instruction was an incorrect statement of the law concerning willful and/or wanton misconduct. We agree.

 Two elements must be established by the evidence to fix liability for willful and wanton misconduct. First, the defendant must have knowledge of an *impending* danger or have been conscious of a course of misconduct calculated to result in *probable* injury. Second, the defendant's actions must have exhibited his indifference to the consequences of his conduct. *Clouse v. Peden*, (1962) 243 Ind. 390, 186 N.E.2d 1; *Brown v. Saucerman*, (1957) 237 Ind. 598, 145 N.E.2d 898. It is the *probability* or *likelihood* of injury which justifies the labeling of the defendant's conduct as reckless or wanton, as opposed to merely negligent.

 Plaintiff's Instruction No. 9 would have informed the jury that liability for willful and wanton misconduct could attach if Allis-Chalmers knew "a hazard . . . *could* result from foreseeable misadjustments during the course of anticipated maintenance." However, conduct which merely *could*, or *might possibly* result in injury does not amount to willful and wanton misconduct. Therefore, plaintiffs' Instruction No. 9 was an inaccurate statement of the law and was properly refused.

### B. Substantial Change

Appellants also argue the trial court erred by refusing plaintiffs' Instruction No. 19 on substantial change. We hold the instruction was properly denied.

Instruction 19 read as follows:

"In order to prove that there was a substantial change in the forklift truck after it left the factory of Allis-Chalmers Corporation, it must be shown by a preponderance of the evidence that the forklift truck which turned over on Raymond Conder had undergone change which was:

(1) Substantial; and

(2) Not reasonably foreseeable by the defendant Allis-Chalmers Corporation; and

(3) Contributed to the defect which caused the injury to Raymond Conder."

We acknowledge the general rule that it is error for a trial court to refuse to define in its instructions technical and legal phrases in connection with material issues of the law suit if properly requested to do so. *Love v. Harris*, (1957) 127 Ind.App. 505, 143 N.E.2d 450. The term "substantial change" is undoubtedly a word of art in the law of strict liability. *Cornette, supra.* However, subsection (1) of Instruction No. 19 was redundant, and potentially confusing. It would have told the jury that in order for a change to be considered a substantial change, it had to be "substantial." Subsections (2) and (3) of the instruction properly define substantial change without this verbiage. Therefore the trial court was justified in refusing the instruction as tendered by the plaintiffs.

## DISPOSITION

In summary, we hold the trial court erred in giving Allis-Chalmers' Instruction Nos. 5, 6 and 10. In light of the rather complex issues of law and fact which faced the jury in this case, the plaintiffs may well have been prejudiced as a result. It cannot be said the instructions clearly presented the law to the jury. Therefore, the judgment in favor of Allis-Chalmers is reversed, and the matter is remanded for a new trial on all issues.

Appellants concede the jury was properly instructed as to the liability of defendant Hull Lift Truck, Inc. The judgment rendered on behalf of Hull, not being contrary to the law, is therefore affirmed.

MILLER, P. J., and YOUNG, J., concur.