Lewis CRAVEN, Appellant (Plaintiff Below),

v.

NIAGARA MACHINE AND TOOL WORKS, INC., Appellee (Defendant Below).

No. 2–280A48.

Court of Appeals of Indiana, Fourth District.

March 23, 1981.

Thomas D. Strodtman, Indianapolis, for plaintiff-appellant.

Michael W. Wells and Henry E. Bradshaw, Bingham, Summers, Welsh & Spilman, Indianapolis, for defendant-appellee.

YOUNG, Presiding Justice.

Appellant Lewis Craven brought suit in strict tort liability against appellee Niagara Machine & Tool Works, Inc. for personal injuries suffered by him as a result of

punch press accident. Judgment on the evidence was entered in favor of Niagara, from which Craven appeals. We reverse.

Craven raises three issues on appeal. Because of the overlapping substance and the arrangement of the arguments in his brief we restate the issues as follows:

1. Whether the trial court erred in granting Niagara's motion for judgment on the evidence?

2. Whether the trial court erred in excluding evidence of allegedly similar punch press accidents?

Lewis Craven is a skilled tool and die maker with over forty years experience in his trade. At the time of the accident, he was employed by Allen's Precision Machine and Tool to make and repair dies. When Craven had completed his work on a die, he would attach the die to the punch press to "try" it out. For this purpose, he was required to place his hands between the dies to properly align the press. In February 1977 Craven was injured while lining up material for a die he had just repaired when the press ram fell on his hand. As a result of the accident, Craven lost two fingers and part of a third finger. The punch press that Craven was operating had been manufactured in 1953 by Niagara. The machine was equipped originally with a foot treadle device which engaged the operation of the press. A previous owner had replaced this foot device with a dual palm device which, if installed properly, would require the operator to use both hands to engage the press thereby eliminating the possibility of the worker's hands being caught inside the press when activated. The machine's on-off button and engine had also been replaced. A flywheel guard which prevented an operator from using the flywheel to inch down the press had been removed.[1] In the machine's original condition, it could only be "inched" by inserting a bar in a hole at the end of the crankshaft.

At trial Craven testified that on the day of the accident he "inched" the press down by using the flywheel. After checking to see that the die met properly, he turned on the press to stamp the part. Once stamped, he turned off the machine and waited for the flywheel to stop. When he placed his hand between the dies to move the part, the ram fell causing the die to close on his hand. While instructions on proper use of the machine were given to the original buyer of the press, the press itself had never contained warning labels concerning any special dangers in the use of this machine.

After Craven presented his evidence, Niagara filed a motion for judgment on the evidence. The trial court granted the motion at the close of Niagara's presentation of evidence on the basis that no defective condition existed when the press left the hands of Niagara; rather the defect, which caused the injury, was a result of a substantial change in the condition of the product.

■ The rule in Indiana with respect to motions for judgment on the evidence is that such a motion may be properly granted only if there is not substantial evidence or reasonable inference derived therefrom supporting an essential element of the claim: a complete failure of proof. *Ortho Pharmaceutical Corp. v. Chapman*, (1979) Ind.App., 388 N.E.2d 541. Where reasonable men might differ about the evidence or where the determination of liability depends upon resolving conflicting evidence, the issue is one for a jury. Therefore, a trial court may properly grant judgment on the evidence against a plaintiff only where the evidence on one or more issues is without conflict and is susceptible of only an inference in favor of the defendant. *Gilbert v. Stone City Const. Co., Inc.*, (1976) 171 Ind.App. 418, 357 N.E.2d 738. Appellate review of a ruling on a motion for judgment on the evidence is subject to the same standards which govern the trial court in ruling on the motion. *Hendrickson & Sons Motor Co. v. OSHA*, (1975) 165 Ind.App. 185, 331 N.E.2d 743. Therefore, this court's task is to consider the evidence most favorable to the non-moving party along with all reason-

---

1. The "inching" process was a method used to lower the press ram close to the press base so that the die inside would not break when the machine was engaged.

able inferences therefrom. From this evidence we must determine whether there was any evidence supporting each element which would justify submission of the claim to the jury. Indiana Rules of Procedure, Trial Rule 50. *Hendrickson, supra; Montgomery Ward & Co., Inc. v. Tackett,* (1975) 163 Ind.App. 211, 323 N.E.2d 242.

At the time this cause of action accrued, the theory of strict liability defined in the Restatement (Second) of Torts Section 402A [2] had been expressly adopted as part of the common law in Indiana.[3] *Ayr-Way Stores, Inc. v. Chitwood,* (1973) 261 Ind. 86, 300 N.E.2d 335. *Ortho Pharmaceutical Corp. v. Chapman,* (1979) Ind.App., 388 N.E.2d 541; *Cornette v. Searjeant Metal Products, Inc.,* (1970) 147 Ind. App. 46, 258 N.E.2d 652. For a plaintiff to establish a products liability claim, it must be shown (1) that he was injured by the product, (2) because it was defective and unreasonably dangerous, (3) that the defect existed at the time the product left the hands of the defendant, and (4) the product was expected to and did reach the consumer without substantial change in its condition. *American Optical Co. v. Weidenhamer,* (1980) Ind.App., 404 N.E.2d 606, 614 (trans-

fer pending); *Gilbert v. Stone Const. Co., Inc.,* (1976) 171 Ind.App. 418, 424, 357 N.E.2d 738, 743. A product may be defective because of manufacturing flaws, design defects, or failing to discharge a duty to warn or instruct of potential dangers of a product. *Dias v. Daisy-Heddon,* (1979) Ind. App., 390 N.E.2d 222. Craven does not contend there was fault in the design or manufacture of the press; but, rather, he claims that the lack of warnings concerning the possibility of the ram falling [4] or the inherently dangerous nature of the press rendered it unreasonably dangerous.

Generally, the duty to warn arises where the supplier knows or should know of the danger involved in the use of its product or where it is unreasonably dangerous to place the product in the hands of the user without a suitable warning. *Nissen Trampoline Co. v. Terre Haute First National Bank,* (1975) Ind.App., 332 N.E.2d 820, rev'd on different grounds (1976) 265 Ind. 457, 358 N.E.2d 974 (citing, *Posey v. Clark Equipment Co.,* (7th Cir. 1969) 409 F.2d 560, cert. denied 396 U.S. 940, 90 S.Ct. 374, 24 L.Ed.2d 242). However, where the danger or potentiality of danger is known or should be known to the user, the duty

---

**2.** The Restatement (Second) of Torts Section 402A states:

Special Liability of Seller of Product for Physical Harm to User or Consumer.

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

**3.** In June 1978, the common law of strict liability in tort was codified and is now stated at I.C. 33–1–1.5–1 to 33–1–1.5–8.

**4.** We find insufficient evidence to support a duty to warn of the possibility of the ram falling which would require submission of this issue to the jury. Plaintiff offered no evidence of how or why the ram fell. The accident occurred some twenty-five years after the manufacture of the press and after substantial changes had occurred in it. One witness testified for plaintiff that he "thought" the press had "double-tripped" once. Craven presented other evidence of "double-tripping" accidents of Niagara's "A-Series" presses which were similar in clutch design to the "H-Series" involved in this accident. But, Craven failed to present any evidence relating the "falling" of this "H-Series" ram to the clutch failure. He also failed to present evidence of the time of these accidents and condition of these presses which would relate a danger of the ram falling to this "H-Series" press when it left defendant's hands. Without more connecting evidence, the "double-tripping" of the "A-Series" presses is not probative of any risk a danger of the ram falling in this "H-Series" press. Therefore, there was insufficient evidence to support this duty to warn.

does not attach. *Id.* The article sold must be dangerous (without the warning) to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community (of users) as to its characteristics. *Gilbert, supra.* Neither party disputes that the press caused the injury. Therefore, we must determine if there is evidence to establish that the press had an unreasonable propensity for causing harm which would not be contemplated by the ordinary user with ordinary knowledge common to the foreseeable class of users when it left the defendant's hands without a warning. As noted above, Indiana law recognizes that a product can be defective in certain instances if the defendant fails to warn or instruct of potential dangers. *Dias, supra.* In addition, the failure to warn of hazards associated with foreseeable misuse of a product may also render the product unreasonably dangerous. *Conder v. Hull Lift Truck, Inc.,* (1980) Ind.App., 405 N.E.2d 538 (petition for rehearing pending). Failure to warn which renders the product unreasonably dangerous can range from a complete absence of any warning to a warning which is given but inadequate. *Ortho, supra.* In connection with the latter range, the test of propriety has been expressed as whether the warnings given are reasonable under the circumstances as determined by application of negligence theory. *Id.* In *Ortho* this court referred to *Sterling Drug, Inc. v. Yarrow,* (8th Cir. 1969) 408 F.2d 978 which used the guidelines of Section 388, Comment n. This section states that the reasonableness of a warning is proportionate to the gravity of the risk involved. *Sterling Drug, Inc., supra* at 994.

■■■ As proof of a defective and unreasonably dangerous product because of an improper warning of an inherent danger, Craven introduced evidence that the service bulletin which was distributed to the original purchaser of the press contained a warning: "Do not put your hands under the die area unless the power is turned off and the slide is blocked up." He testified that use of safety blocks would probably have prevented his injury; however, he did not have an opportunity to read this bulletin. He also testified that he used safety blocks when he worked on larger dies. In addition the vice-president of defendant Niagara testified that Niagara was aware of problems in the misuse of this product and that they knew these machines often came into the hands of second and third purchasers. Additional evidence established that many tool and die makers did not use safety blocks in similar presses. Defendant introduced evidence that fellow employees recognized the need to use safety blocks and, in fact, Craven had been instructed to use them. However, considering the evidence which is most favorable to the non-moving party (Craven) we find sufficient evidence to present a jury question as to whether the product was defective and unreasonably dangerous when it left Niagara's hands because of an inadequate warning regarding the use of safety blocks or whether the risk of danger in not using them was generally known and recognized which could eliminate the duty to warn.

■■■ While the jury might find the press defective and unreasonably dangerous without a better warning concerning use of safety blocks we must still determine if Craven has offered sufficient evidence to establish that the injury was a result of the defect. Craven must show that the defect was the cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produced the result complained of and without which the result would not have occurred. *Johnson v. Bender,* (1977) Ind.App., 369 N.E.2d 936, 939. This language describes what is known as the "but-for" test, *Ortho, supra,* or the "cause-in-fact" test. In addition Craven must establish that the defect was the proximate cause: that the injury or consequence of the wrongful act was of a class reasonably foreseeable at the time of the act. *Ortho, supra* (citing *Elder v. Fisher,* (1966) 247 Ind. 598, 217 N.E.2d 847). The ultimate test of legal proximate causation is reasonable foreseeability. The assertion of an intervening, superseding cause, fails to alter

this test. *Dreibelbis v. Bennett*, (1974) 162 Ind.App. 414, 319 N.E.2d 634. Accordingly, an intervening cause, e. g., the substantial changes made by third parties, will not operate to defeat a recovery from the defendant if the intervening cause would necessarily, or might reasonably, have been foreseen by the defendant. *Conder, supra.* However, unforeseeable intervening negligent acts of a third party may constitute a superseding cause which relieves the defendant of responsibility for the plaintiff's injuries. *Id.* Ordinarily, this question of proximate cause is for the jury, *Ortho, supra,* as is the question concerning the foreseeability of intervening third party misconduct. *Conder, supra.*

 In reference to cause-in-fact, there is a rebuttable presumption that adequate warnings will be heeded. *Conder, supra.* Where warnings are inadequate, the presumption is in essence a presumption of causation. *Ortho, supra.* A rebuttable presumption does not shift the burden of proof but it does impose upon the opposing party a burden of producing evidence. *Sumpter v. State*, (1974) 261 Ind. 471, 306 N.E.2d 95. If the opponent produces evidence which rebuts the presumption, it serves no further purpose. *Id.* Niagara offered evidence to rebut the presumption through testimony that Craven had been warned and reminded to use safety blocks, which he failed to do. Once this evidence was offered Craven was then obligated to prove, by direct and circumstantial evidence and reasonable inference therefrom, the ultimate fact that he would have heeded the warning. See e. g. *Roberts v. Wabash Life Ins. Co.*, (1980) Ind. App., 410 N.E.2d 1377, 1383. Craven testified that he would heed a warning of a different nature and that he did use safety blocks when he recognized a danger with heavy dies. He also testified that he heeded warnings on "Roll-in" saws. Other witnesses testified that he was extremely cautious in carrying out his work in terms of safety. From this evidence, a jury could reasonably infer that Craven would have heeded a warning; thus, the issue of cause in fact was ultimately for the jury. In addition, there was sufficient evidence from

the warning in the bulletin distributed to the original owner and known problems of misuse for the jury to consider the issue of proximate cause.. Unlike the case of *Shanks v. A.F.E. Industries, Inc.*, (1981) Ind., 416 N.E.2d 833, where a product functioning completely as intended was incorporated into a system which was unforeseeable to the manufacturer, the product in the present case was being used in a manner foreseeable to the defendant. Niagara was well aware of the many functions of the press including the use of it to "try out" dies. Therefore, there was probative evidence for the jury to consider and determine whether the injury was reasonably foreseeable in light of the circumstances known to the defendant. Evidence of substantial change in the press in terms of the palm-activating devices and other mechanical changes must be considered by the jury to determine if they constitute a superseding unforeseeable intervening cause which would relieve defendant of liability.

 In summary, we find that Craven offered sufficient evidence from which a jury could find Niagara's warning inadequate at least with regard to communicating to users a clear indication of known dangers from not using safety blocks. This evidence could satisfy the element of proof for a "defective condition unreasonably dangerous." In addition, we find sufficient evidence to create a jury question concerning the issue of causation. Therefore, the granting of judgment on the evidence for defendant was reversible error.

 Craven further claims that the trial court erred in sustaining defendant's motion in limine excluding answers to interrogatories showing "double-tripping" accidents in prior cases involving the "A-Series" press. Craven made the required offer to prove. *Niehaus v. State*, (1977) 265 Ind. 655, 359 N.E.2d 513, *cert. denied*, 434 U.S. 902, 98 S.Ct. 297, 54 L.Ed.2d 188 (1977). He contends that this evidence was admissible because the "A-Series" press and accidents were substantially similar thereby showing knowledge of a dangerous condi-

tion in the "H-Series" press involved in this case. Evidence of similar prior accidents may be admissible to show that a party has notice of a dangerous condition. *New York Central Railroad Co. v. Sarich*, (1962) 133 Ind.App. 516, 180 N.E.2d 388. However, the admissibility of evidence of similar occurrences rests within the discretion of the trial court. *Bottoms v. B&M Coal Corp.*, (1980) Ind.App., 405 N.E.2d 82; *Smith v. Indiana State Board of Health*, (1974) 159 Ind.App. 360, 307 N.E.2d 294. Further, such evidence is inadmissible where there is not a similarity in essential conditions surrounding them and the particular thing in issue. *Enos Coal Mining Co. v. Schuchart*, (1963) 243 Ind. 692, 188 N.E.2d 406. See 2 WIGMORE, EVIDENCE § 458 (Chadbourn rev. 1979). Therefore, the inquiry must be whether the trial court abused its discretion in refusing to admit this evidence. The witness who answered the interrogatories testified that the "A-Series" press and "H-Series" press were similar in clutch design, and he also admitted knowledge of the "A-Series" press "double-tripping" problems. Thus, there was no need for additional evidence on the subject of defendant's knowledge regarding "double-tripping" accidents. In addition, Craven failed to establish similarity of the conditions surrounding the "double-trip" accidents of the "A-Series" press to the accident of this case. Therefore, we find no abuse of discretion.

Craven further argues that this evidence should have been permitted for impeachment purposes. Craven claimed that answers to interrogatories in the present case were inconsistent with those given in other cases. The record does not reveal inconsistent statements. Rather the question asked in the interrogatories of the present case was ambiguous and broad which resulted in a general answer which was not inconsistent with answers to previous interrogatories in other cases. Niagara's vice-president stated in his answer that he was uncertain about what plaintiff was asking. Craven could have responded by making a more specific request. Even if the answers were inconsistent, extrinsic evidence for impeachment is admissible only if

the witness denies having made the statement or if he asserts that he cannot recall having made it. *Duncan v. State*, (1975) 166 Ind.App. 302, 335 N.E.2d 827; *Aikins v. State*, (1971) 256 Ind. 671, 271 N.E.2d 418. No such denial occurred. Therefore, Craven failed to lay the proper foundation for admission of these answers for impeachment purposes. *See Farm Bureau Mutual Ins. Co. of Indiana v. Seal*, (1962) 134 Ind. App. 269, 179 N.E.2d 760. Thus, the trial court did not err in excluding this evidence for impeachment purposes.

We find no error in the exclusion of the above evidence; however sufficient evidence existed to create a prima facie case for plaintiff. Therefore, we reverse the trial court's granting of defendant's motion for judgment on the evidence and remand for new trial.

Reversed and remanded for new trial.

CHIPMAN and MILLER, JJ., concur.